HENRY KARST, Respondent, *v.* GEORGE A. GANE, THOMAS F. GANE and ROBERT DINWIDDIE, Appellants, Impleaded with Others.

*Chattel mortgages — chapter 279, Laws of 1833, requiring them to be filed — the statute applies to all creditors of the mortgagor who became such before the filing — an indorser who has not been charged is not a " creditor."*

Chapter 279 of the Laws of 1833 provides that a chattel mortgage not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void, as against the creditors of the mortgagor, unless the mortgage, or a true copy thereof, shall be filed as required by said act.

*Held*, that the intent of the statute was to include in its benefits the existing creditors of the mortgagor generally, and all who were such when the mortgage was filed.

That it included any person whose debt was created either before or after the chattel mortgage was given, but before it was filed.

That an indorser, whose liability had not become fixed by the maturity and dishonor of the note to which he was a party, was not a "creditor" of the mortgagor within the meaning of said act.

Appeals by the defendants, George A. Gane and Thomas F. Gane, and by the defendant Robert Dinwiddie, from a judgment, entered in the office of the clerk of the city and county of New York on

the 6th day of January, 1891, after a trial by the court at the New York Special Term, adjudging certain chattel mortgages to be void to the extent of the plaintiff's judgments; that the liens of said mortgages be deferred to the execution liens obtained under said judgments; that the defendants be restrained from enforcing their mortgages until the plaintiff's judgments were satisfied, and that the property levied upon under said executions was subject to the executions issued upon said judgments, should be applied thereon and be sold thereunder.

On September 25, 1889, Barr and Miller gave to the defendant Dinwiddie a chattel mortgage for $3,000, payable on demand, covering the property levied on, and on the same day they gave a similar mortgage to the defendants Gane for $2,500, subject to the mortgage to Dinwiddie. Barr and Miller retained possession of the property, and were in possession when the levy in question was made.

The debts for which the eight promissory notes made by Barr and Miller, payable to the order of H. Miller, and by him assigned to the plaintiff, were given were all in existence prior to September 25, 1889.

The notes made by Belford, Clark & Co., to the order of Barr and Miller, five in number, were for value, and before their maturity, and before said chattel mortgages were executed, were assigned to one John Karst, and by him were transferred to the plaintiff. Two of said notes became due before and three after said chattel mortgages were filed.

The remaining facts are stated in the opinion.

*Samuel J. Crooks*, for the appellants.

*Fred W. Hinrichs*, for the respondent.

DANIELS, J.:

The appeal has been brought upon the judgment-roll alone. By the judgment, executions, which had been issued upon judgments in favor of the plaintiff and levied upon the personal property of the debtors, were secured a preference over two chattel mortgages executed by the judgment-debtors. These mortgages were made on the 25th of September, 1889, but were not filed until the seventh day of the following month of November. Prior to the execution of the chattel mortgages, Edward Barr and Herman C. Miller, the

mortgagors, made eight promissory notes, payable to the order of H. Miller, who assigned and transferred them to the plaintiff. Five of these notes matured prior to the filing of either of the chattel mortgages, one matured on the same day, and the other two after the filing of the mortgages. And these notes were included in two judgments recovered by the plaintiff, upon which executions were issued and levied on the property described in the chattel mortgages. The plaintiff also recovered three judgments upon notes made, prior to the execution of the mortgages, by Belford, Clark & Co., payable to the order of the defendants, Edward Barr and Herman C. Miller, and by them indorsed to John Karst, and by him assigned and transferred to the plaintiff. Two of these indorsed notes became due before the filing of the mortgages, and three of them afterwards. And executions were issued also upon these judgments and levied upon the property described in and incumbered by the mortgages.

The court held at the trial that these mortgages were void as against all the executions, because of the failure of the mortgagees to file them, as that has been required by the statute. Upon this subject it has been provided that every mortgage, or conveyance intended to operate as a mortgage, of goods and chattels, which shall not be accompanied by an immediate delivery and followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless the mortgage, or a true copy thereof, shall be filed as directed in the succeeding section of the act. (3 R. S. [6th ed.], 143, § 9.) But it was objected, on behalf of the mortgagees, that this section of the statute was designed only for the protection of persons who became creditors of the mortgagors after the execution of the mortgages and prior to the time when they were filed. But the statute clearly has proceeded upon no such distinction, for it has declared the mortgage withheld from the files to be absolutely void as against the creditors of the mortgagor. Not the creditors who should become such between the time of the execution and the filing of the mortgage, but the creditors generally, including all persons sustaining that relation to the mortgagor during the time the mortgage is withheld from the files. If it had been intended to restrict it to those persons who should become creditors after the execution and

before the filing of the mortgage, language to that effect might reasonably be expected to be found in the section. And its entire absence is a decisive circumstance against the construction which the objection taken requires to be given to the section. The legislature were actuated by no such design, as the intention appears in the law. But the design and intent was to render the mortgage or mortgages absolutely void as against all persons who should be creditors of the mortgagor during the time, whether their debts were created before the execution of the mortgage or afterwards. And that is the effect which has been given to the statute when this view of it has been brought before the courts for consideration. *Thompson* v. *Van Vechten* (27 N. Y., 568) contains a concession that this construction should be given to the statute. And it was acted upon and followed in that form in *Fraser* v. *Gilbert* (11 Hun, 634), and very decidedly in *Clark* v. *Gilbert* (10 Daly, 316). There the mortgage was made on the 1st of April, 1880, and the debt included in the judgment upon which the creditor's action was brought, was for meats supplied the mortgagor from the 31st of May, 1877, to the 30th of April, 1880, and the judgment was recovered for the balance the 21st of December, 1880, while the mortgage was not filed until March 17, 1881, and it was held that this mortgage was void as against this creditor. The decision in this manner made, is a direct authority in favor of the plaintiff in the present action so far as the judgments of the creditor were recovered upon notes made by the mortgagors, or upon indorsements which matured prior to the time of the filing of the mortgages. And the principle appears to have generally secured the approval of the court in *Keller* v. *Paine* (107 N. Y., 83). There it was declared in very general terms that the omission to file the mortgage would render it void as against existing creditors. These cases conform to and carry out the language of the statute, and so far sustain the judgment from which the appeal has been taken as it proceeds upon notes made by the mortgagors, or indorsements upon which their liability was fixed prior to the time when the mortgages were filed on the 7th of November, 1889. And the plaintiffs, having issued executions upon such judgments, under which levies were made upon the property incumbered by the mortgages, were entitled to commence and maintain this action to remove them as obstruc-

tions from the executions as they to that extent stood in their way. (*Steffin* v. *Steffin*, 4 Civil Pro. Rep., 179; *McElwain* v. *Willis*, 9 Wend., 549.)

But as to the indorsements upon which the liability of the judgment-debtors had not become fixed at the time when the mortgages were filed, a different principle is required to be applied. The case is not one where an actual intent to defraud existed in the disposition of property, which might very well be held to include the indorsee of commercial paper before an absolute liability became fixed, but it is that of a legislative principle applied to declare and define the effect of the omission to file the mortgages, as that was provided for and required by another section of the statute. The neglect to file would not necessarily involve bad faith, or a fraudulent intent, but it was an omission to comply with the directions contained in the statute. And for that omission the law declared the property included in the mortgage to be liable to the outstanding demands of other creditors. But an indorsee of commercial paper, where the liability of the indorsers has not become fixed, is not, in the sense in which this term "creditor" has been used in this statute, a creditor of the mortgagor. For until the maker of the paper is in default no obligation is created by it against the indorser. The utmost effect of his contract is, that he will pay the debt mentioned in the paper in case the maker fails to pay when it shall mature, and a proper demand shall be made upon him for payment, and notice of such demand and failure shall be given to the indorser. And it is only from the time when the paper shall become dishonored, and the liability of the indorser fixed in this manner, that he can, within the significance of this term as it is contained in this section of the statute, be held to be a creditor of the mortgagor. As to this term "creditor" it was, by the Supreme Court, considered to include the case of a guarantor prior to the time of a default under its terms in *Jackson* v. *Seward* (5 Cowen, 67). That was a case where the judgment debtor had conveyed his property by what was alleged to have been a voluntary conveyance. Prior to the conveyance the grantor had entered into a guarantee that a certain judgment by him assigned was collectible. But after the conveyance executions were issued upon the judgment,

which failed to realize the amount recovered by it. And for that reason a judgment for the deficiency was finally recovered against the grantor in the conveyance, and an action brought by the creditor to set aside the deed as a voluntary conveyance. In the Supreme Court it was considered that this guarantee invested the party in whose favor it was created with the rights of a creditor prior to the delivery of the deed. And, in the course of the opinion in that court, it was said by the judge delivering it, that " the question of creditor, or not, cannot turn on the ground of contingent liability when considering this act. If it should, all indorsers and sureties would be deprived of its protection." (Id., 71.) This proceeded very much upon the authority of the case of *Jackson* v. *Myers* (18 Johns., 425.) But the judgment in that case was recovered for a wrong, and by its recovery established the existence of the claim made by the plaintiff at the time when the wrong itself was perpetrated. While no such retroactive effect can result from the dishonored indorsement of commercial paper, but the liability of the indorser is created then, and not prior to that time. The case already referred to was appealed, after the decision made by the Supreme Court, to the Court of Errors. And it was there held, as one of the grounds for the reversal of the judgment, that the party to whom the guarantee was delivered was not a creditor of the grantor in the deed at the time when it was made and delivered, but that he first became so when it turned out that the judgment could not be wholly collected by the executions and the sales of property made to satisfy it. (*Seward* v. *Jackson*, 8 Cowen, 406.)

And that certainly is an authority directly supporting the position that an indorsee under a statute of this description does not become a creditor of the indorsers until the paper indorsed is dishonored by the maker. It was conceded there, as it has already been suggested, that where an actual intent to defraud existed, a different principle could well be applied. But neither in that case nor in the present was that intent proved to be present as an element in the transaction. So far, therefore, as this judgment has proceeded upon the notes indorsed by the judgment-debtors, one of which became due on the twentieth of November, another on the 17th of December, 1889, and another on the 20th of December, 1889, it has been erroneously directed. But as to the residue of the judgments the right of the

plaintiff to maintain this action is well sustained by the statute and the authorities which have already been referred to.

The judgment, consequently, should be reversed and a new trial. ordered, with costs to the defendants to abide the event, unless, within twenty days after notice of this decision, the plaintiff stipulates to deduct the amount of these notes, with the interest upon them, from the judgment which has been recovered. And in case of the service of such a stipulation, then the judgment, as modified, should be affirmed, without costs to either party.

Lambert, J., concurred.

Judgment modified as stated in opinion, and, as modified, affirmed,. without costs to either party.