(54 N. W. Rep. 1032.)

---

### THE UNION NATIONAL BANK *vs.* T. N. OIUM.

Opinion filed Deccember 28th, 1892.

**Sufficiency of Description in Chattel Mortgage.**

> The description in a chattel mortgage stated that the property was situated on a certain section in a certain township and range, but did not name the county or state within which such section and property were located. The mortgage was filed by the mortgagee in Ransom County, in the then Territory of Dakota, and it was shown that the section named in the mortgage was located in that county, and that property corresponding with that described in the mortgage was situated thereon, owned by the mortgagor. *Held*, a sufficient description as against an attaching creditor as to such property, but not as to property not situated on such section.

**Priority of Mortgage Over Attachment Lien.**

> Where a creditor attaches personal property covered by a mortgage, between the execution and delivery of the mortgage and the filing thereof, his lien is not superior to that of the mortgagee, under the statute (§ 4379) declaring such mortgage void as to creditors unless filed, where the debt for which he attaches existed before the giving of the mortgage, and the creditor has not altered his position to his detriment since the mortgage was given, and before the filing thereof.

**Possession Substitute for Refiling.**

> It is unnecessary, to preserve the lien of a chattel mortgage, to renew the same by refiling a copy thereof, with a statement, etc., as required by Ch. 41, of the Laws of 1890, where the mortgagee has taken possession of the property before the period arrives at which the statute requires the mortgage to be so renewed.

N. D. R.—13.

Appeal from District Court, Ransom County; *Lauder*, J.

Action of replevin by the Union National Bank of Oshkosh against T. N. Oium, as sheriff of Ransom County, and another. There was judgment for defendants, and plaintiff appeals.

Reversed.

*Ball & Watson* and *Rourke & Allen*, for appellant.

No valid levy of attachment was ever made upon the engine and separator and some of the plows claimed to have been attached, as they were not present nor in the view of the sheriff at any time. *Rogers* v. *Bonner*, 45 N. Y. 379; *Bond* v. *Willett*, 31 N. Y. 102; *Ray* v. *Harcourt*, 19 Wend. 495; *Brown* v. *Pratt*, 4 Wis. 513; *Dresser* v. *Ainsworth*, 9 Barb. 619; Crocker on Sheriff's § 436-7; Freeman on Executions § 262. When the possession of attached property is voluntarily abandoned by the custodian and it comes into the possession of any one claiming adversely to the attaching officer, the lien of the attachment is lost. Wade on Attachments § 164; *Sanderson* v. *Edwards*, 16 Pick. 144; *Boynton* v. *Warren*, 99 Mass. 172; *Littleton* v. *Wyman*, 28 N. W. Rep. 582; *Nichols* v. *Patten*, 36 Am. Dec. 713; *Hardon* v. *Lissen*, 36 Ill. App. 383; *Russell* v. *Mayor*, 29 Mo. App. 167. The engine, separator and certain plows to which the court found that the lien of plaintiffs mortgage did not attach, because of the fact that at the time of the execution of the mortgage they were not on section 19, have since the delivery of such mortgage come into the possession of the mortgagee, and possession equally with filing is notice to all persons of the mortgagees interest in mortgaged property. *Gooding* v. *Riley*, 50 N. H. 400; *Clark* v. *Tarbell*, 57 N. H. 328; Jones on Chattel Mortgages, § 176; *Morrow* v. *Reed*, 30 Wis. 81, *Janvrin* v. *Fogg*, 49, N. H. 340. The taking of possession by the mortgagee of the mortgaged property before any other right or lien attaches, the title obtained under the mortgage is good against everybody, although it be not acknowledged and recorded or the record be ineffectual by reason of any irregularity. The taking of possession is an indentification and appropriation of

the specific property to the mortgage and cures any defect there may be through an insufficient description of the property. Jones on Chattel Mortgages, § § 178, 60; *Chipron* v. *Feikert*, 68 Ill. 284; *Frank* v. *Miner*, 50 Ill. 444; *Brown* v. *Webb*, 20 Ohio 389; *Parsons Savings Bank* v. *Sargent*, 20 Kan. 576.

There is no occasion for *refiling* a mortgage where the mortgagee has taken actual possession of the mortgaged property. Jones on Chattel Mortgages, § 294; *Porter* v. *Parmlee*, 52 N. Y. 185; *Dayton* v. *Peoples Savings Bank*, 23 Kan. 421. The rights of the parties must be determined by the facts as they stood at the time the cause of action accrued. *Bates* v. *Wilbur*, 10 Wis. 415; *Newman* v. *Tymeson*, 12 Wis. 448; *Case* v. *Jewett*, 13 Wis. 498; *Meech* v. *Patchin*, 14 N. Y. 71; *Lewis* v. *Palmer*, 28 N. Y. 271. The defendant cannot take advantage of the failure of the appellant to refile its chattel mortgage. "One not having a judgment and execution is not a creditor within the meaning of the provision of the statute, declaring that the omission to file a chattel mortgage renders it void as against creditors of the mortgagee and subsequent purchasers and mortgagees in good faith." *Jones* v. *Graham*, 77 N. Y. 628; *Thompson* v. *Van Vechten*, 27 N. Y. 568; *Paine* v. *Mason*, 7 Ohio St. 198; *Stewart* v. *Beale*, 7 Hun. 405. Actual notice of an unrecorded mortgage of property is as effectual as constructive notice by record, against subsequent purchasers; and an attaching creditor stands in no better position. Jones on Chattel Mortgages, § 317; *Allan* v. *McCalla*, 25 Ia. 464; *McLaurin* v. *Haupt*, 9 Ia. 83; *Brown* v. *Brabb*, 34 N. W. Rep. 403; *LeNeve* v. *LeNeve*, Leading cases in Eq. 202.

In replevin, defenses must be with reference to the time of the commencement of the action. Cobbey on Replevin, § § 764, 796 and 798; *Patten* v. *Hammer*, 28 Ala. 618; *Coller* v. *Beckley*, 30 Ohio St. 523, *Nichols* v. *Michael*, 23 N. Y. 264; *Allen* v *Crary*, 10 Wend. 349. The pleadings evidence and judgment in an action of replevin should be confined to the points and questions necessary to elucidate the right of plaintiff to the immediate possession of the property in question at the commencement of the suit.

Cobbey on Replevin, § § 977, 978 and 979; *Hamer* v. *Hathaway*, 33 Cal. 117; *Blue Valley Bank* v. *Clement*, 30 N W. Rep. 64. In replevin the value of each item of property should be found separately, as the whole may be returned or a part only in satisfaction of the judgment *pro tanto.* Cobbey on Replevin, § 1063. Under an attachment the sheriff has no right to make use of the property, and no right to damage for being deprived of its use. *Tandler* v. *Saunders*, 22 N. W. Rep. 271; *Broadwell* v. *Paradice*, 81 Ill. 474; *McArthur* v. *Howett*, 72 Ill. 359; Cobbey on Replevin, § 895.

The value of property at the time of the trial should be found instead of its value at the time of its taking. *Rowley* v. *Gibbs*, 14 Johns. 385; *Tuck* v. *Moses*, 58 Me. 361; *Boylston* v. *Davis*, 70 N. C. 485; *Burkeholder* v. *Rudrow*, 19 Mo. App. 60; *Mix* v. *Kepner*, 81 Mo. 93; *Allen* v. *Judson*, 71 N. Y. 76; *Pierce* v. *Vandike*, 6 Hill 613; *Brewster* v. *Silliman*, 38 N. Y. 423-9.

*Goodwin & Van Pelt* and *Geo. D. Emery*, for respondent.

The mortgage contains no description of the property by which it could be identified. No presumption arises from the execution of the chattel mortgage, that the mortgagor owns the property— nor that such property is in existence. *Warner* v. *Wilson*, 73 Iowa, 719, 36 N. W. Rep. 719.

The mortgage must not be indefinite and uncertain. "It must indicate, suggest and direct inquiry whereby the property can be identified." *Griffiths* v. *Wheeler*, 2 Pac. Rep. 842; *Smith* v. *McLean*, 24 Iowa 322; *Tolbert* v. *Horton*, 33 Minn. 104. The individual description of each separate item or class of chattels is fatally defective. *Barr* v. *Cannon*, 69 Ia. 20, 28 N. W. Rep. 413; *Eggert* v. *White*, 13 N. W. Rep. 426; *Pennington* v. *Jones*, 10 N. W. Rep. 274; *Warner* v. *Wilson*, 36 N. W. Rep. 719; *Hayes* v. *Wilcox*, 17 N. W. Rep. 110; *Smith* v. *McLean*, 24 Ia. 322. As to the separator no clue of identification is furnished by the mortgage. *Leffel* v. *Miller*, 7 So. Rep. 324 *Kellogg* v. *Anderson*, 40 Minn. 207; *Armsby* v. *Nolan*, 28 N. W. Rep. 569; *Rhutassel* v. *Stevens*, 27 N. W. Rep.

786; *Caldwell* v. *Trowbridge*, 26 N. W. Rep. 49; *Leighton* v. *Stuart*, 26 N. W. Rep. 198; *Tabor* v. *Sampson*, 4 Pac. Rep. 45.  Plaintiffs mortgage not being filed was void against defendant even though he had actual notice of its existence.  *Bank of Farmington* v. *Ellis*, 30 Minn. 270; *Houk* v. *Condon*, 40 Ohio St. 569; *Wilson* v. *Leslie*, 20 Ohio 161; *Barr* v. *Cannon*, 69 Ia. 20, 28 N. W. Rep. 413; *Farmers L. & T. Co.* v. *Hendrickson*, 25 Barb. 484; *Tyler* v. *Strang*, 21 Barb. 198; *Ramsey* v. *Glenn*, 33 Kan. 271; *Jewell* v. *Simpson*, 17 Pac. Rep. 463; *Ransom* v. *Schmela*, 13 Neb. 73.  Filing is necessary to give the mortgage validity as to creditors, and the contest between the creditor holding the mortgage and the creditor with the attachment is simply a race of diligence.  *Rich* v. *Roberts*, 48 Me. 548, *Travis* v. *Bishop*, 13 Metc. 304; *Bevous* v. *Bolton*, 31 Mo. 437; *McComb* v. *Meyers*, 8 Wis. 236; *Lockwood* v. *Slevin*, 26 Ind. 124.  If the plaintiff in replevin alleges that the defendant, the sheriff, is in possession of goods and wrongfully detains them, he is estopped from claiming that the defendant is not in possession for the purpose of showing that the defendant has not made a valid levy or attachment.  Thompson on Trials, § 197; *Derby* v. *Gallant*, 5 Minn. 119; *N. P. R. R. Co.* v. *Paine*, 7 Sup. Ct. Rep. 323.  Plaintiffs rights under the mortgage were lost at time of trial because of its failure to refile its mortgage—and defendant was entitled to judgment.  Wells on Replevin, § 496.

CORLISS, C. J.  This litigation presents a strife for supremacy between a chattel mortgagee, the plaintiff and appellant, and an attaching creditor of the mortgagor, one of the defendants and respondents.  The sheriff who made the attachment and the creditor in whose behalf it was made are both parties defendant. The nature of the action is replevin.  To sustain it, the plaintiff must show a valid chattel mortgage, and that its lien is superior to that of the attachment.  The mortgage has been assailed as invalid for want of a sufficient description of the mortgaged property.  It was executed at Oshkosh, in the State of Wisconsin, on property in the then Territory of Dakota.  The portion of the mortgage material to a proper consideration of this point reads

as follows: "The following described goods, chattels, and property, viz: 4,000 bushels of wheat, in granary on section 19, township 134, range 56; 38 horses, being all the horses on said section 19; 26 head of cattle, cows, bulls, steers, heifers, etc., being all the cattle on said section; 6 self-binders; 7 sulky 16 in. plows, (make, Flying Dutchman;) 2 Flying Dutchman gang plows; 4 Van Brunt 3-horse seeders; 1 broadcast Stowbridge seeder; 6 4-horse drags; 16 set double harness; 2 top buggies; 1 platform wagon; 7 double-heavy lumber wagons and racks; 80 tons hay; 2,000 bushels oats; and all other personal property on said section,—all said property being on said section; also 1 threshing machine, together with all the appurtenances," etc. We think that the description is sufficient, within the rule which merely requires that it should suggest such inquires as will enable a third person by the aid thereof to identify the property. The property, with an exception which will be referred to hereafter, was described as being situated on section 19, township 134, range 56. The mortgage was filed in Ransom County, Territory of Dakota, and there was found within that county a description of land corresponding with the description in the chattel mortgage. We think that the fact that neither the county nor the state in which this real estate was located was stated in the mortgage is unimportant, because, under the law requiring the mortgage to be filed in the county where the property is situated, the mortgagee filed it in Ransom County, in the then Territory of Dakota, and within that county it was shown that a piece of land known, according to the government survey, as "section 19, of township 134, in range 56," is situated, and that upon it was property answering to the description contained in the mortgage, owned by the mortgagor. There is no evidence that as to any of the classes or kinds of property described in the mortgage there was any greater number belonging to that class than the number mentioned in the mortgage. Without further discussion of this point or a review of the authorities, we refer to the extended note to the case of *Barrett* v. *Fisch*, [Iowa, 41 N. W. Rep. 310,] 14 Am.

St. Rep. 238, 239, *et seq.*, as containing a collation of the decisions, and we are satisfied that they fully sustain our view in this respect.

It was urged that the only means of identifying the property intended to be mortgaged was by its location at the time of the execution of the mortgage, and that there is no evidence which fixes its situs at the precise moment of the giving of the security. But it appears to be undisputed that all of the property, except an engine, separator, and some plows, were on this section 19 the day the property was attached, which was only three days after the execution of the mortgage. Having in view the character of the property, and the fact that the owner thereof, Mr. Morrison, also owned this tract of land, that the property seems to have been kept there constantly, and there being no proof that it was placed upon this farm after the execution of the mortgage, we are clear that there is nothing in this contention; but, as to the engine, separator, and some of the plows, we must hold that the description in the mortgage was insufficient. It appeared that they were not upon section 19, and there was no other description of them, aside from the incorrect statement as to their location, sufficient to point out the property to a third person within the rule governing such cases.

The attachment, it is claimed, was made after the execution but before the filing of the mortgage. Assuming this to be so, still the question remains whether the attachment lien is superior to that of the mortgage. That the lien of the mortgage was good as between the parties to it without the filing thereof cannot be questioned. The attaching creditor can be in no better position, unless by virtue of the statute. It provides as follows: "A mortgage of personal property is void as against creditors of the mortgagor and subsequent purchasers and incumbrancers of the property in good faith for value, unless the original, or an authenticated copy thereof, be filed by depositing the same in the office of the register of deeds of the county where the property mortgaged, or any part thereof, is at such time situated." The invalidity of the mortgage is claimed, not by a subsequent purchaser

or incumbrancer, but by an attaching creditor, who attached for a debt contracted before the giving of the mortgage. It is therefore necessary to determine the meaning of the word "creditors" in this statute. It is important that there should be kept in mind a distinction between the right of a general creditor to insist that an unfiled chattel mortgage is void and the ability to enforce this right. While an unfiled chattel mortgage may be void as to a general creditor, he cannot avail himself of the statute until he has armed himself with attachment or execution and levied on the property, or has in some other way secured a lien thereon. Before he has seized the property covered by the chattel mortgage, or secured some lien thereon, he is in no position to raise the question that the mortgage is void as to him. *Bank* v. *Bates*, 7 Sup. Ct. Rep. 679; *Kitchen* v. *Lowery*, (N. Y. App.) 27 N. E. Rep. 357, *Thompson* v. *Van Vechten*, 27 N. Y. 568; *Dempsey* v. *Pforzheimer*, (Mich.) 49 N. W. Rep. 465. The statute does not, however, require that he should be armed with process or have a lien on the property to entitle him to come within the category of "creditors," as to whom the unfiled instrument is a nullity. The mortgage is not void as to creditors who have seized the property, or who hold process under which they can seize it. This is not the language of the statute. The mortgage is void as creditors, and nothing is said in the statute about the necessity of a creditor's having secured a lien on the mortgaged property. The fact that the creditor cannot assail the mortgage until he has seized the property is of no moment in determining whether he belongs to the class of persons as to whom the mortgage is void. Whether he belongs to that class is one question; whether he is in a position to derive benefit from belonging to that class is another, and entirely different question. The two inquiries are distinct, and each is independent of the other. When he arms himself with process, and seizes the mortgaged property, the court will then inquire whether he is a "creditor," within the meaning of the statute which declares void the mortgage as against "creditors." The facts which determine this point are

independent of the fact of seizure, and can derive no aid there-from. The inquiry is whether he is a "creditor" within the spirit of the law, and not whether he is a creditor with process which he has levied on the property covered by the mortgage. If it were necessary that he should have seized the property before he can be regarded as a creditor within the statute, great wrong could be done the public by the withholding of a chattel mort-gage from record, for which those wronged would have no redress. After a chattel mortgage had been given, and while it was with-held from record, a loan might be made to the mortgagor, or credit might be extended to him on the sale of property, the creditor relying upon the apparent freedom of the debtor's property from liens. All the harm that could be done the credi-tor has now been consummated. The subsequent filing of the chattel mortgage cannot undo it. It would be a gross perversion of the statute requiring chattel mortgages to be filed to assert that the right of this creditor successfully to attack the unfiled mortgage depends on his seizing the property under process before the mortgage is filed; that until then he cannot be con-sidered a creditor as to whom the mortgage is void. It is true that he must seize the property before he can raise the point, but he need not seize it before the instrument is filed. Whenever he does seize it, whether before or after the filing of the mortgage. he is then in a position to urge that he was before the mortgage was filed a "creditor," within the meaning of the statute. Strong authority exists to support this proposition, that the fact of a levy under process does not enter into the question whether the creditor is one whom it was the purpose of the law to protect as against unfiled chattel mortgages. *Thompson* v. *Van Vechten*, 27 N. Y. 568. In this case the court say: "But, when they [credi-tors] present themselves with their process, they may, I think, go back to the origin of their debt, and show, if they can, that, when it was contracted, the incumbrance with which they are now confronted existed, and was kept secret by being withheld from the proper office." See also, *Feary* v. *Cummings*, 41 Mich. 376, 1 N.

W. Rep. 946; *Bank* v. *Bates*, 120 U. S. 556, 562, 7 Sup. Ct. Rep. 679. If the word "creditors" is to have its widest significance, then no chattel mortgage can ever be valid as against the creditors of the mortgagor unless it is filed simultaneously with its execution. If, when the mortgagee hurries to the proper office to file his security, he is to be deprived of its protection because a creditor, intermediate its execution and its filing, has seized the mortgaged property under attachment, it must be because the creditor so seizing it is a "creditor," within the meaning of the statute. He is not such because he has seized the property before the filing of the mortgage. This element, as we have seen, is entirely unimportant. The fact of levy prior to the filing of the mortgage has no bearing upon the question whether he is such a creditor as the statute protects. We must therefore eliminate this element from our consideration. He would be a creditor within the law just the same although he should not secure a levy on the property until after the filing of the mortgage. If, then, the mortgage is void as to him when he seizes it five minutes after the execution and before the filing of the mortgage, .it is void as to him without such previous seizure. He may seize the property after the mortgage is filed, and then insist that he is a "creditor," within the law, just as fully as when the seizure is made before the filing of the instrument. That the fact whether the seizure is or is not before the filing of the mortgage is of no moment in determining whether the person is a creditor within the law is made apparent from the silence of the law as to this fact, in connection with the injustice and absurdity of such an interpretation of the law. If the date of seizure is controlling, a creditor whose claim antedates the execution of the mortgage, and who therefore extended no credit while the mortgage was withheld from record, could destroy a mortgage filed one minute after the execution thereof by seizing the mortgaged property after the mortgage had been delivered, but before it could be filed, no matter how great the diligence of the mortgagee in filing it, and despite the fact that he parted with value on the

security of the mortgage; and, on the other hand, a creditor who had trusted the mortgagor after the execution and delivery of the unfiled mortgage, relying on the apparent freedom of the property from liens, would lose all right to protection by the subsequent filing of the mortgage, although not filed until after the expiration of a year perhaps, provided it were filed before such creditor should seize the property. The language of the statute is not ·that the mortgage is void as against creditors "until" it is filed. This would warrant the construction that the property could be seized by creditors and the mortgage ignored until it had been filed. The statute make the mortgage void "unless" it is filed. This indicates a purpose to fix the rights of those who in the future shall deal with the owner on the faith that the property is unincumbered. As to those persons it is not merely void until it is filed; it is void for all time,—void just the same whether they seize the property ·before or after the mortgage is filed. We have seen that the word "creditors" cannot have its broadest significance in this statute. No court has pretended to hold that the mere fact that the person was a creditor during the interval between the execution and filing of the mortgage would entitle him to claim the benefit of the act. It is unjustifiable to place upon the statute the construction limiting the meaning of this word to those who have actually seized the property before the mortgage is filed. It would not be in harmony with the spirit of the law. It would defeat its purpose, which is protection to those who act in ignorance of the unfiled security, by taking that protection from those who, having dealt with the mortgagor after the execution and before the filing of the mortgage on the theory that the property was unincumbered, should fail to seize the property before the mortgage should be filed; and, on the other hand, it would extend the protection of the statute to those who have no claim to its protection because they did not act after its execution, but before,—who have not been prejudiced in the least by its being kept from record; it would extend to this class protection should such creditors levy upon the mortgaged property

before the filing of the security. We cannot give the word "creditors" in this statute its broad, comprehensive meaning; neither can we attach a qualification which leads to such absurd, unjust results, which runs counter to the manifest policy of the law.   In what light, then, should this word be interpreted?   The answer seems obvious.   We must look to the purpose of the law.   We find it is a law designated to protect those who deal with the owner of mortgaged property under circumstances indicating that they relied on the freedom of the property from incumbrances, because there was no record thereof.   Its policy as to such persons is to protect them against all secret chattel mortgage liens.   To bring themselves within the spirit of the law, they must show that such mortgage existed and was unfiled when they dealt with the owner of the property.   This statute intends to protect creditors in the same spirit, and in only the same spirit, in which it protects subsequent purchasers and mortgagees. Purchasers and incumbrancers, to be entitled to protection, must be purchasers and incumbrancers in good faith for value. Section 4379, Comp. Laws.   Whether those words "in good faith for value" are used in such a statute is unimportant.   They are often interpolated into such a law by construction because of its obvious policy.   Now, it is well established that one who purchases or takes security for an antecedent debt is not entitled to the protection of such a statute.   The reason is that he has not altered his position to his detriment on the strength of the apparent freedom of the property from incumbrance.   The cases are unanimous on this point.   *Bank* v. *Bates*, 120 U. S. 556, 7 Sup. Ct. Rep. 679; *Button* v. *Rathbone, Sard & Co.*, (N. Y. App.) 27 N. E. Rep. 266; *Cassidy* v. *Harrelson*, (Colo. App.) 29 Pac. Rep. 525, and authorities there cited.

Again, notice of the unfiled chattel mortgage destroys his right to protection.   The reason is that he has not altered his position to his detriment relying on the apparent freedom of the property from incumbrance.   He knows that it is incumbered.   Why should not the word "creditors" be interpreted in the light of this

same policy of the law?  Why should general creditors receive unreasonable protection, on the one hand, or be denied reasonable protection, on the other hand?  Why should they be more favored than creditors who have taken security on the property? It is no answer to say that the words "in good faith for value" do not relate to the word "creditor."  They would be meaningless if they did.  When they refer to a mortgagee, they mean the parting of value on the strength of the security without notice.  But it would be idle to talk about a credit or "in good faith for value," except to indicate that he had a bona fide claim against the debtor.  These words would not mean that the creditor had extended the credit relying on the silence of the record as to the existence of a chattel mortgage.  It is true that language might have been employed in the statute which would have expressly indicated what this court regards as the purpose of the statute. But the act then would not have shown more clearly what was its object.  Its policy is protection, and we know that the lawmaking power had no thought of protecting those who did not need protection,—those who had not changed their position to their disadvantage because of the failure to file the security.  The word "subsequent," as applied to purchasers and incumbrancers, does not relate to creditors.  But this gives no warrant to the inference that all creditors, existing as well as subsequent, were intended to be protected.  It would have defeated in part the policy of the law had only subsequent creditors been included in the statute.  It would have cut off from the protection of the law those existing creditors who, while the default in filing the mortgage continued, should altar their position to their detriment, as by releasing security, or by extending the time of payment.  The language of the court in *Brown* v. *Brabb*, 67 Mich. 17, 34 N. W. Rep. 403, on this point meets our approval.  Said the court:  "To my mind the reason why the word 'subsequent' was not inserted in the statute before the word 'creditors' was to meet just that contingency where an existing creditor might suffer injury by relying upon the

apparent situation, and so be damnified by postponing action, or extending the time of credit already given, or possibly in some other manner." Unless we interpret the word "creditors" in the light of the spirit of the statute as applicable to purchasers and mortgagees, we will ultimately find ourselves involved in the most absurd distinctions. One who takes a second mortgage to secure an existing debt is not entitled to protection as against a prior unfiled mortgage of which he had no notice, although he puts his mortgage on file before the first mortgage is filed; but, if the same creditor will refuse to accept what would seem to be a good security, he may, by suing upon his debt, and by levying upon the property before the mortgage is filed, secure a lien which will be paramount to that of the mortgage. This result is inevitable unless we look at the spirit of the law in construing the word "creditors."

Again, a subsequent mortgagee for present value is not protected if he has notice of the existence of the unfiled mortgage when he takes his security and extends the credit; but if he will lend on the general credit of the mortgagor, and refuse ·the proffered security, he may, it is contended, by suing on his claim, and attaching the mortgaged property before the filing of the mortgage, obtain a superior lien. Some of the courts seem to hold that notice of the chattel mortgage at the time of the making of the seizure will defeat the creditor's right to assail it as void. But why should this notice work to his prejudice if he gave credit while the mortgage was withheld from record? The criticism on this doctrine in *Crooks* v. *Stuart,* 7 Fed. Rep. 800-803, meets our approval. Said the court: "One who gives credit to a merchant in the open and exclusive possession of a stock of merchandise upon which there is no recorded lien has a right to assume that he is dealing with the owner of such stock, and to rely upon such ownership in extending credit. If he is to be affected by any secret lien upon such stock which may be recorded before he secures a lien by levy or otherwise, it will generally happen that the first notice to him upon which he can make an affidavit for

attachment will be the recording of the lien, so that the circumstance that gives him the right cuts of the remedy." The absence of any express qualification of the word "creditors" is not significant of an intent to use that·word in its broadest sense, unlimited by the spirit of the statute. It has frequently been held that a registration or a recording law affords no protection to purchasers or mortgagees who take with notice of the unfiled or unrecorded instrument, or who part with no value on the strength of the silence of the record, although there is nothing in the statute to qualify the words "purchasers or mortgagees;" such as the phrases "in good faith," or "for value," or "without notice." The manifest spirit of the law makes the employment of any such language unnecessary. *Allen* v. *McCalla*, 25 Iowa, 464; *Le Neve* v. *Le Neve*, 2 Lead. Cas. Eq. 182-184, and cases in note; *Tolbert* v. *Horten*, (Minn.) 18 N. W. Rep. 647, 650; *Dyer* v. *Thorstad*, (Minn.) 29 N. W. Rep. 345. The only interpretation which can be placed on the word "creditors" to prevent decisions which will give to general creditors protection when morally they are not entitled to it, and withhold that protection when in justice it should be extended to them,—the only construction which will give to them the same measure of protection, and no more, as is accorded·to creditors who take security on the property,—is the construction which regards the general creditor as standing, for the purposes of this statute, in just the same position he would have occupid had he taken security when his debt was incurred, or his position was altered to his detriment, with· the single exception, of course, that he cannot be regarded as standing in that position when his debt was incurred before the unfiled mortgage was given. In such a case, having no lien, as he would have had had he taken security, he can claim no priorty of lien by virtue of a prior mortgage; and, having trusted the debtor before any default in filing the subsequent mortgage existed, he has no claim to protection as a creditor. If subsequently, while the mortgage is withheld from record, such creditor, without notice thereof, alters his position to his disadvantage, he is entitled to

protection if he would have been entitled to protection had he then taken a mortgage on the property. Knowledge of the unfiled mortgage possessed by the general creditor when he changes his position to his detriment should be as fatal to his right to protection as it would be had he taken a mortgage on the property with such knowledge. A lien under attachment should be regarded as conferring no greater rights under the same circumstances than a lien under a mortgage.

The construction which has uniformly been placed upon the word "creditors" in statutes providing for the refiling of chattel mortgages is in the direction of the interpretation which meets our approval in this case. Although the word "creditors" is used without qualification, and the mortgage declared void as to them when not refiled within a certain period, the courts have invariably held that one who seized the property before the default occurred could not, after the default, be regarded as a creditor within such a statute, although he was in fact a creditor. *Lowe v. Wing,* 56 Wis. 33, 13 N. W. Rep. 892; *Case v. Conroe,* 13 Wis. 498; *Edson v. Newell,* 14 Minn. 228, (Gil. 167;) *Corbin v. Kincaid,* 33 Kan. 652, 7 Pac. Rep. 145; *Frank v. Playter,* 73 Mo. 672; *Howard v. Bank,* (Kan.) 24 Pac. Rep. 983; *Ullman v. Duncan,* (Wis.) 47 N. W. Rep. 266. See language of court in *Swiggett v. Dodson,* (Kan.) 17 Pac. Rep. 594-598. We find express authority for or in support of our views in *Brown v. Brabb,* (Mich.) 34 N. W. Rep. 403; *Crippen v. Jacobson,* 56 Mich. 386, 23 N. W. Rep. 56; *Waite v. Mathews,* 50 Mich. 392, 15 N. W. Rep. 524; *Fearey v. Cummings,* 41 Mich. 376, 1 N. W. Rep. 946; *Dyer v. Thorstad,* (Minn.) 29 N. W Rep. 345; *Thompson v. Van Vechten,* 27 N. Y. 568; *Argall v. Seymour,* 48 Fed. Rep. 548; *Root v. Harl,* (Mich.) 29 N. W. Rep. 29; *Cutler v. Steele,* (Mich.) 48 N. W. Rep. 631. In *Brown v. Brabb,* (Mich.) 34 N. W. Rep. 403, the court say: "The language of the statute contains no qualifications as to the time the creditors become such. It does not say that the unfiled mortgage shall be void as to subsequent creditors, and this has led some courts to hold that it is void as to all creditors. But a qualification is

plainly implied from the language of the whole section, considered with reference to the object of the law. It must be remembered that the filing is designed to take the place of the delivery of the property. The object of the law is to protect persons dealing upon credit with one who is in possession of personal property as the ostensible owner, upon the reliance of such ownership, from secret conveyances by which he is enabled to obtain a fictitious credit to which he would not be entitled if the true situation were known. Until such secret conveyance is given, the law has no force. There is nothing for its provisions to operate upon, and the creditor has the protection of the ordinary remedies for the enforcement of his demands. These are not enlarged by the statute, and no new rights or remedies are conferred upon the creditor. To him it makes no difference whether the debtor sells, mortgages, or gives away his property, either secretly or openly, unless it is done with intent to defraud him. His remedy to reach the property conveyed depends entirely upon the fraudulent character and intent with which the debtor has conveyed it away. As to him, the debtor may secure another person by delivering the property to him, followed by a continued change of possession, in which case he would not be likely to extend any further credit. But suppose, instead, his debtor gives a mortgage in good faith, to secure an honest debt, to another creditor, or for a present consideration, for a loan of money; there is nothing in the quality of these acts by which he is injured. There is no legal wrong done him; nor is there any legal wrong done him if the mortgage is kept secret or unfiled, unless he has thereby been led to extend new credit or further time, or has been led to abstain from taking action to collect his debt, in ignorance of the real situation. It would seem unreasonable that without extending any new credit, or otherwise suffering loss on account of the mortgage being kept from the files, or being filed in a wrong place, he could be permitted to say that the mortgage is void as to him, and that he would attach the

N. D. R.—14.

property, and deprive the owner of his security, simply because he had failed to comply with the law. He has not been led to do or to omit doing anything upon the strength of such noncompliance with the statute. And herein lies the difference between his case and the innocent purchaser or incumbrancer under the recording laws. These protect subsequent purchasers and incumbrancers in good faith, who have been led to rely upon the record title. To my mind the reason why the word 'subsequent' was not inserted in the statute before the word 'creditors' was to meet just that contingency where an existing creditor might suffer an injury by relying upon the apparent situation, and so be damnified by postponing action, or extending time of credit already given, or possibly in some other manner." In *Thompson* v. *Van Vechten*, 27 N. Y. 568, the court say: "But, when they [creditors] present themselves with their process, they may, I think, go back to the origin of their debt, and show, if they can, that, when it was contracted, the incumbrance with which they are now confronted existed, and was kept secret by being withheld from the proper office." In *Kitchen* v. *Lowery*, (N. Y. App.) 27 N. E. Rep. 357, the court say of certain unfiled chattel mortgages: "They may be void as to creditors, for the reason that they were not filed at the time the credit was given."

To sum up our views as to the proper construction to be given the word "creditors" in this statute, we say that the word must have some restriction placed upon its broad meaning to prevent the most absurd consequences; that there is nothing in the language or spirit of the law which will warrant the view that the right to assail an unfiled mortgage depends entirely upon the fact whether the seizure of the mortgaged property does or does not antedate the filing of the mortgage. Such a construction would result in extending protection when it ought not to be extended, and in withholding it when the creditor has a moral right to claim it. As the word must have some limitation placed upon its meaning, the only sound limitation is one which makes the statute harmonious in all its provisions, which does not unreasonably

discriminate either in favor of or against general creditors, but places them under the same protection accorded to incumbrancers. Certainly it is unjustifiable to give the general creditor better protection under this statute than the creditor with security on the very property embraced in the unfiled mortgage. There is nothing in the words or policy of the law which lends countenance to a distinction so anomalous. We therefore hold that, as the debt for which the attaching creditor seized the property was a debt contracted before the execution and delivery of the mortgage, and while, therefore, there was no default in filing it, and, as it does not appear that the creditor, after the giving of the mortgage and before it was filed, in any manner altered his position to his detriment, the mortgage lien is paramount, even assuming that a valid levy was made before the mortgage was filed.

It is next urged that the plaintiff is not entitled to judgment for a delivery of the property, because, as it is contended, his once valid lien has been lost by his failure to renew the mortgage by refiling a copy of the same, together with a statement of the amount due, as required by chapter 41 of the Laws of 1890. This is a most peculiar law. It has certainly not answered its purpose if the object of its enactment was to settle controversies with respect to the meaning of the then existing laws regulating that subject. It provides as follows: "That a mortgage of personal property shall, unless duly renewed as provided in § 2 of this act, cease to be valid as against the original mortgagee and mortgagor, his heirs or assigns, and against any attaching or execution creditor of the mortgagor, or any subsequent purchaser or mortgagor of the property, in good faith, whether the title of such purchaser shall vest, or the lien of such creditor or mortgagee shall attach, prior or subsequent to the expiration of the three year period or periods in § 2 of this act mentioned. Section 2. In order to preserve and continue its priority of lien, every chattel mortgage must, not less than ten or more than thirty days immediately preceding the expiration of three years from the

date of the filing thereof, be renewed by the filing in the office of the register of deeds of the proper county of a copy of such mortgage, together with a statement of the amount or balance of the mortgage debt for which a lien is still claimed, duly subscribed and sworn to by the then owner of the mortgage, his agent or attorney; and in like manner the copy and statement of debt must be again filed every three years, or the mortgage shall cease to be valid as against the parties in § 1 of this act mentioned." This statute must be construed with a view to the object of the law in requiring a chattel mortgage to be filed and to be refiled after the lapse of a certain period. Filing is a substitute for possession. Jones, Chat. Mortg. § § 176, 178, 236, 237; *Morrow* v. *Reed*, 30 Wis. 81; *Harrington* v. *Brittan*, 23 Wis. 541; *Dolan* v. *Van Demark*, (Kan.) 10 Pac. Rep. 850; *Fromme* v. *Jones*, 13 Iowa, 474; *Janvrin* v. *Fogg*, 49 N. H. 340; *Kelley* v. *Reynolds*, 39 Mich. 467; *Nicklin* v. *Nelson*, (Or.) 5 Pac. Rep. 51. When possession is immediately delivered, it is unnecessary to file the mortgage. If possession is taken by the mortgagee before the period arrives at which the mortgage is required to be renewed, there is no reason why the failure to renew it should effect its validity. There is ample authority to support this construction of the statute. *Dayton* v. *Bank*, 23 Kan. 421; Jones, Chat. Mortg. § § 294, 297; *Porter* v. *Parmly*, 43 How. Pr. 445, 459, on appeal, 52 N. Y. 185; *Howard* v. *Bank*, (Kan.) 24 Pac. Rep. 983, 985. See, also, *Hauselt* v. *Harrison*, 105 U. S. 401; *Applewhite* v. *Mill Co.*, (Ark.) 5 S. W. Rep. 292; *Bank* v. *Sprague*, 21 N. J. Eq. 530. The plaintiff took possession of the property, under claim and delivery proceedings in this action, long before he was required to renew his mortgage, and was in possession of the property at the time of trial. The judgment in this case required him to return the property to the defendants. Being in possession before the time arrived at which the statute requires a chattel mortgage to be renewed, there was no occasion for renewing it. We think that, upon this record the plaintiff was entitled to recover except as to the engine, separator, and some of the plows. For

the error of the court in rendering judgment for the defendants upon the findings, the judgment is reversed, and a new trial ordered. All concur.

## ON REHEARING.

We have carefully considered the petition for rehearing. It has not convinced us that we were in error. It is urged that it appears that the mortgagee took its security for an antecedent debt, and that, therefore, it does not occupy the same vantage ground which it would have held had the mortgage been taken to secure a loan made on the strength of that security. This contention is founded on an utter misapprehension of the question. A mortgagee, whether for a present or an antecedent debt, whose security is prior in point of time, is entitled to priority of lien except as such priority is affected by the statute. We hold that one who attaches for a debt incurred before any default in filing the mortgage exists is not entitled to the protection of the statute; that he is not within its manifest policy and spirit. To bring himself within the act, he must show that he parted with value while the default existed. But a mortgagee who has first obtained a valid lien has a right to rely upon the priority secured by what the law regards as his superior diligence, whether the mortgage is to secure an old or a new debt. His lien is protected, unless the creditor can point to a statute which denies the mortgagee such protection. The question whether the attaching creditor comes within the statute is in no manner affected by the inquiry whether the mortgagee took his security for an existing claim or a newly created indebtedness. This inquiry only becomes important as to one whose lien is subsequent in point of time, but who claims priority of right. It is never made to determine the rights of one who has secured the first lien in point of time. He stands on his legal priority until one having a subsequent lien brings himself within some statute which will give him priority of right.

It is also urged that the attaching creditor was injured by the delay in enforcing his claim, induced by the failure to file the

chattel mortgage, creating in his mind the belief of the solvency of the debtor. It would be difficult to support such a contention under the facts in this case, the execution of the mortgage having been followed by the levy of the attachment within a few days. But considering this argument in the abstract, without reference to the particular facts of this litigation, we can see no force in it. It amounts to this: That a creditor may be as greatly prejudiced by refraining from action, relying on the silence of the record, as if by a binding agreement he had actually extended the time of payment. But how is the creditor injured by the withholding of the mortgage from the record under such circumstances? Had the mortgage been immediately filed, he must have attached subject to it. He is in no worse position if he attaches, and the mortgagee who has not filed his security claims and is allowed priority. The mortgage is simply a first lien, as it would have been had it been promptly filed. But where time of payment is extended by binding agreement, the creditor is seriously detrimented, because the mere subsequent discovery of an unfiled chattel mortgage will not entitle him to rescind the agreement extending the time of payment, there being no fraud. To hold that mere inaction entitles one to protection would be to overturn elementary principles. It would destroy the distinction which has always been recognized between subsequent incumbrancers for a newly created indebtedness and those who have merely taken security for antecedent obligations. To remain passive for a day because lulled into a sense of security by the silence of the record would as fully entitle to protection as to stand inactive for a week or a month, or even a year. Upon this theory, then, every mortgagee for an existing claim would become, at least after the expiration of a day, an incumbrancer entitled to protection as against a prior unrecorded instrument. But all authority is against this.

It is also urged that this rule will have a tendency to encourage fraud by inducing the withholding of mortgages from record. This argument, if such it can be termed, applies with equal force

to the doctrine that a subsequent chattel mortgagee for an ante-
cedent debt is not protected as against an unfiled prior mortgage
on the same property. The first mortgage may be withheld from
record for a year, and yet one who was a creditor when it was
given, and who has not since it was executed altered his position
to his disadvantage, cannot, by taking a second mortgage on the
property, although without knowledge of the unfiled lien, secure
any priority, however long thereafter the first mortgage is kept
from record. If the mortgage in either case is kept from record
for a fraudulent purpose, a different rule would apply. Nor do
we think that one who takes security for an honest debt will care
to risk that security by failing without reason to file it as required
by law. There can be no pretense, under the facts of this case,
that the attaching creditor refrained from taking steps to collect
his claim because of the silence of the record. Only three days
elapsed between the execution of the mortgage and the com-
mencement of the action in which the property was seized. He
was not stirred to action by discovering that a chattel mortgage
had been given. Nor is there aught to indicate that he would
have enjoyed any more advantageous position had the mortgage
been filed the day it was given, and had he thereafter and on the
same day commenced his suit and seize the property. It is said
that, if the creditor whose claim accrues while the default in
filing the mortgage exists is to be protected even after the mort-
gage is filed, he may wait two years, and then, by attaching, sur-
prise the mortgagee, who will be injured because he has not anti-
cipated that his lien could be so defeated. But is the innocent
creditor who parts with his money on the strength of the mortga-
gor's credit—a credit frequently created because of his ownership
of unincumbered property—to be debarred his right to rely on
the silence of the record merely by reason of the filing of the
mortgage before he can seize the property for his claim? Debts
are seldom payable when incurred, and, if the subsequent filing of
the unfiled instrument is to destroy the innocent creditor's right
to protection, the greatest injustice will be done him; for it will

be generally, if not invariably, impossible for him to sue upon his claim until some time after the debt is contracted. Moreover, to assert that the mortgagee would be surprised by a seizure after two years is to beg the question. He is not surprised if the law entitles such creditor to protection whenever he attaches. The mortgagee knows that he runs the risk of his lien being defeated by such a creditor if he fails for a time to file his mortgage; and if the right to priority has once attached to such creditor's debt, and if it can be secured by a seizure before the mortgage is filed, wherein is the mortgagee detrimented if such seizure is allowed priority when made after the mortgage is filed? We are aware of decisions which place a different construction upon similar statutes. We had examined them before the original opinion in this case was written, but could not give them our approval. To follow them would conduct us to this anomalous position: Had the attaching creditor in this case been met at the farm by an offer to give him a mortgage on the same property, and had this offer been accepted by him, there is not an adjudication which would have upheld this mortgage as a lien prior to the unfiled mortgage had the former been received merely as security without any extension of time or other act on the part of the creditor to his prejudice. And yet, by a refusal to accept security, it is contended that, under the same statute which has denied him protection as mortgagee, the creditor has actually increased his rights, and has secured protection. He has been benefited by his rejection of the proffered security. A number of Minnesota cases are cited as controlling. They are not at all in point. In *Murch* v. *Swensen*, 40 Minn. 421, 42 N. W. Rep. 290, the question arose under the Minnesota statute of frauds, providing that every sale, unless accompanied by an immediate delivery, and followed by an actual and continued change of possession, etc., is presumed fraudulent and void as against creditors, etc., unless it appears that the transfer was made in good faith. The word "creditors" as used in this statute, is expressly defined by the next section to mean all persons who are creditors of the vendor at any time

while the property remains in his possession or under his control. Gen. St. 1878, Ch. 41, § 16. There is no such definition of the word "creditors" as used in our registry law relating to the filing of chattel mortgages. Moreover, the object and construction of such a statute are different from the purpose and interpretation of a mere registry law. In *Tolbert* v. *Horton*, 31 Minn. 518, 18 N. W. Rep. 647, all that was decided was that a subsequent mortgagee who took with actual notice of a prior unrecorded mortgage is not entitled to protection. How this can be an authority for the contention of the attaching creditor in this case that he can claim protection it is difficult to see. It will be noticed that the Minnesota statute is radically different from ours. It contains an element which makes it, as to mortgages, a statute against frauds and perjury. In that state the mere filing of the instrument will not suffice. There still exists, if the property is not delivered, a presumption of fraud which must be overcome. Gen. St. 1878, Ch. 39, § 1. Our registry law contains no such feature. Section 4379, Comp. Laws. See, also, § 4657, Id. This peculiar provision of the Minnesota act is noticed by both opinions in the case, as well the dissenting as the prevailing opinion. In the construction that such statute was more than a mere registry law all members of the court agreed. Says Judge Mitchell: "Our statute on chattel mortgages is not a mere registry law, as seems to be often assumed. It is a statute declaring certain mortgages void as to certain persons unless certain things exist or are affirmatively made to appear." *Bank* v. *Ellis*, 30 Minn. 270, 15 N. W. Rep. 243, merely decides that it is not essential to the protection of a subsequent chattel mortgagee in good faith, as against an unfiled prior chattel mortgage, that the former should place his mortgage on file before the prior mortgage is filed. This decision stands firmly on the language of the statute. But the fact that the subsequent mortgagee was a mortgagee in good faith was not controverted, and it affirmatively appeared in aid of the presumption that he was a bona fide mortgagee; that the mortgagee, on taking the security for an existing debt, surrendered

a valid attachment lien on the mortgagor's crops, thus altering his position to his disadvantage, relying upon the mortgage. This, under all of the authorities, constituted him a bona fide incumbrancer. The New York cases cited to support the view that the seizure before the actual filing of the instrument gives priority fully support this position. But the highest court in that state has not passed directly on this point. *Karst* v. *Gane*, 61 Hun, 533, 16 N. Y. Supp. 385, and cases there cited. Says Mr. Jones in his work on Chattel Mortgages, (§ 245:) "But in New York it is held that a mortgage not duly filed is void as against a general creditor whose claim has accrued during the continuance of the default in filing the mortgage, although the creditor is not in a position to raise the question until he has obtained a judgment or process against the property. The object of the act is to prevent the setting up of secret mortgages against persons who may deal with the mortgagor on the faith that his property is not thus incumbered. Therefore, when a creditor has obtained judgment and execution, he may go back to the origin of the debt, and show, if he can, that, when it was contracted, the incumbrance with which he is thus confronted was kept secret by being withheld from registry;" citing *Thompson* v. *Van Vechten*, 27 N. Y. 568; *Stewart* v. *Beale*, 7 Hun. 405; *Fraser* v. *Gilbert*, 11 Hun. 634. In this condition of the decisions in that state we believe that the court of appeals will finally settle the construction of their registry law, which is the same as ours, in accordance with the views we have herein expressed.

It is also urged that the description in the mortgage was not sufficient as to third persons until the mortgage was filed. It may be that the language of the opinion was susceptible of the construction that the statement in the mortgage that the property was on a certain section, in a particular township and range, was insufficient as to attaching creditors until the mortgage had been filed. But this is not our view. Whenever a description is challenged as insufficient, we are to inquire whether the creditor, after inspecting the instrument, and aided by the inquiries it

suggested, could ascertained what property was intended to be mortgaged. Apply that rule to this case. The property was attached on a piece of real estate answering to the description contained in the mortgage of the land on which the mortgaged property was situated. Property the same as that described in the mortgage is found there. It is owned by the mortgagor. The creditor is aware of his ownership. It is seized by him as the mortgagor's property. Would a sane person entertain a doubt whether the mortgage was intended to cover the property seized? It will not do to assert that the creditor could not know of the contents of the mortgage until it had been filed. Not being within the protection of the law, he is bound to know of the mortgage and its contents without filing. If a creditor or mortgagee may insist that a description in an unfiled mortgage is not good merely because he did not know of the mortgage, he can always defeat an unfiled mortgage containing the most minute and perfect description of the property, although he does not fall within the scope of the statute which annuals the instrument as to certain classes of persons unless filed. The description, if good as to third persons when the mortgage is filed, is equally good as to them although the instrument is not filed. Whether such third persons are protected under the statute as against such unfiled mortgage is an entirely distinct and different question.

The petition for rehearing is denied.

WALLIN, J., having been of counsel, took no part in the above decision.