## AULTMAN ENGINE & THRESHER CO. v. YOUNG. et al.

Civ. Code, § 2089, provides that a chattel mortgage ceases to be valid as against creditors of the mortgagor and subsequent purchasers or incumbrancers in good faith, after three years from the filing thereof, unless, within 30 days next preceding the expiration of such term, a copy of the mortgage and a statement of the amount due, sworn to, are filed anew with the register of deeds; and in like manner the mortgage and statement must be again filed every 3 years, or it ceases to be valid against creditors of the mortgagor and subsequent purchasers or incumbrancers. **Held,** that a subsequent incumbrancer whose mortgage was taken before expiration of six years was not entitled to raise the question that under the concluding paragraph of the section a creditor, subsequent purchaser, and incumbrancer are placed on the same footing because of the omission of the words "in good faith," but that he fell within the class described in the preceding portion of the section requiring "good faith" of the purchaser or incumbrancer.

A creditor of a chattel mortgagor cannot attack the mortgage because not renewed at the expiration of three years, as required by Civ. Code, § 2089, without first having obtained an interest in or a lien upon the mortgaged property through some judicial process.

Civ. Code, § 2089, provides that a chattel mortgage ceases to be valid as against creditors of the mortgagor and subsequent purchasers or incumbrancers in good faith, after three years from the filing thereof, unless, within 30 days next preceding the expiration of such term a copy of the mortgage and a statement of the amount due, sworn to, are filed anew, with the register of deeds. Section 2448 defines "good faith" as an honest intention to abstain from taking any unconscientious advantage of another, even through the forms or technicalities of law, with an absence of all information or belief of facts which would render the transaction unconscientious. Section 2452 provides that every person who has actual notice of circumstances sufficient to put a prudent man on inquiry, and who omits to make such inquiry, is deemed to have constructive notice. A second mortgage given more than three years after the filing of the first mortgage, which was not renewed, described the mortgaged property as that purchased from the first mortgagee, and stated that it was subject to any incumbrance held by the first mortgagee. **Held,** that the insertion of the clause in the second mortgage, "subject to any incumbrance held by the first mortgagee," was sufficient to put the second mortgagee upon inquiry whether the first mortgage had been paid, and to charge the second mortgagee with constructive notice that it had not, where such was the fact, and deny him the character of a subsequent incumbrancer "in good faith" entitled to the benefit of section 2089.

(Opinion filed, March 23, 1910.)

Appeal from Circuit Court, Beadle County. Hon. CHAS. S. WHITING, Judge.

Action by the Aultman Engine & Thresher Company against Charles E. Young and another. From an order sustaining a demurrer to the complaint and a judgment for defendants, plaintiff appeals. Affirmed.

*A. W. Wilmarth,* for appellant. *Crawford, Taylor & Fairbank, for* respondents.

SMITH, J. This is an appeal from an order of the circuit court of Beadle county, sustaining defendant's demurrer to plaintiff's complaint, . and from a judgment for defendant entered upon plaintiff's election to stand upon the allegations of its complaint. The complaint alleged, in substance, that in July, 1904, one H. S. Drake was the owner of a certain Buffalo Pitts engine, and upon that day executed and delivered to H. W. Dean a chattel mortgage thereon for the sum of $1,025 to secure an indebtedness due from Drake to said Dean, which mortgage was filed in the register of deeds' office of Beadle county, on the 13th day of July, 1904; that no renewal of said mortgage has ever been filed in said office; that the indebtedness secured thereby had never been paid; that on the 3d day of September, 1907, the said H. S. Drake, being still the owner of the said Buffalo Pitts engine, executed and delivered to plaintiff a chattel mortgage to secure an indebtedness in the sum of $625 to said plaintiff, which mortgage was duly filed in the office of the register of deeds of Beadle county, on September 3, 1907; that said last-named mortgage specifically described the Buffalo Pitts engine as the one theretofore purchased from H. W. Dean by said H. S. Drake, and also contained a recital that said mortgage was "subject to any incumbrance held by said H. W. Dean." And it is expressly alleged in the complaint that the "incumbrance" referred to was the mortgage given by H. S. Drake to H. W. Dean in 1904, and that it was so understood by the plaintiff and H. S. Drake at the time of the execution of said last-named mortgage; that each of said mortgages contained the usual power of sale, and the mortgage executed and delivered to the plaintiff

contained a provision authorizing the plaintiff to take possession of the mortgaged property for purposes of foreclosure upon a default in payment; that the defendant Chas. E. Young, sheriff of Beadle county, acting under authority of defendant H. W. Dean, took possession of the mortgaged property, on December 15, 1907, for the purpose of foreclosing the mortgage given to H. W. Dean in July, 1904, advertised the same for sale under the power of attorney contained in the mortgage, and on the 28th day of December, 1907, under foreclosure proceedings duly had, sold the said Buffalo Pitts engine to the defendant H. W. Dean, who took possession of and converted the same to his own use; that prior to the foreclosure sale the plaintiff delivered to the defendant Chas. E. Young a duplicate of the chattel mortgage from H. W. Drake to the plaintiff, and demanded that said Young sell said property and apply the proceeds thereof, in satisfaction of the notes secured by the plaintiff's mortgage; that H. W. Drake has never paid the indebtedness to this plaintiff, nor any part thereof, and the whole amount thereof was due and payable at the time of said demand and at the time of said mortgage foreclosure sale. The defendant demurred to the complaint on the ground that it does not state facts sufficient to constitute a cause of action, and specifies as the particular grounds of said demurrer: "That it is specifically stated in the chattel mortgage under which this plaintiff claims right of possession that the engine so mortgaged was bought of H. W. Dean, and it therefore appears on the face of the complaint that the plaintiff had actual knowledge of the existence of the prior chattel mortgage held by H. W. Dean at the time the second mortgage was taken, and that the second mortgage, itself, was made subject to and inferior to the lien of the first mortgage held by defendant Dean." The demurrer was sustained by the trial court, and thereafter a judgment entered for plaintiff, which recites that the plaintiff declined to apply to the court for leave to amend its complaint, and elected to stand thereon, and that judgment was duly entered upon said election.

Appellant contends that the court erred in sustaining the demurrer: "First. Because the plaintiff was a creditor of the mort-

gagor, and the mortgage of H. W. Dean was void as against the mortgagor at the time of the filing of plaintiff's mortgage, because the said H. W. Dean's mortgage had been filed more than 3 years and 30 days without any renewal; at the time the plaintiff's mortgage was filed. Second. Because plaintiff was a subsequent incumbrancer in good faith for value after the term of 30 days had expired subsequent to 3 years after the H. W. Dean mortgage was filed. Because the said H. W. Dean had not filed a copy of said mortgage and affidavit of the amount claimed by the lien as required by section 2089, Civ. Code. Because there was no affidavit of the amount due on the H. W. Dean mortgage, as required by section 2089 of the Civil Code. Third. The plaintiff had the right to infer from the record that the said H. W. Dean mortgage had been paid and is protected by the record as a bona fide incumbrancer." Section 2089 of the Civil Code reads as follows: "A mortgage of personal property ceases to be valid as against creditors of the mortgagor, and subsequent purchasers or incumbrancers in good faith, after the expiration of three years from the filing thereof, unless within thirty days next preceding the expiration of such term, a copy of the mortgage and a statement of the amount of existing debt for which the mortgagee or his assignee claims a lien, sworn to and subscribed by him, his agent or attorney, are filed anew in the office of the register of deeds in the county in which the mortgagor then resides; and in like manner, the mortgage and statement of debt must be again filed every three years or it ceases to be valid as against creditors of the mortgagor and subsequent purchasers or incumbrancers."

Appellant first contends "that, under the concluding paragraph of section 2089, the words, 'or it ceases to be valid as against creditors of the mortgagor, and subsequent purchasers and incumbrancers,' the rights of creditors, and of subsequent purchasers and incumbrancers, are placed on an equal footing." We presume counsel means by this that the omission of the words "in good faith" from this paragraph places the purchaser or incumbrancer in the same position as a creditor, and that as actual notice of a prior mortgage does not affect the rights of a creditor, under the decision of this court in Kimball Co. v. Kirby, 4 S. D.

152, 55 N. W. 1110, like notice would not affect a purchaser or incumbrancer. We need not decide this question, for the reason that the plaintiff is not within the class of incumbrancers described in said paragraph, because its mortgage was not taken after the six years contemplated by this paragraph, but falls within the class described in the preceding portion of the section, which requires "good faith" on the part of the purchaser or incumbrancer.

Appellant also contends that "it makes no difference how the court construes this statute as to subsequent purchasers and incumbrancers, because the plaintiff here is a creditor." This court, in the case of W. W. Kimball Co. v. Kirby, supra, held that the qualification of "good faith and for value" applies only to "subsequent purchasers and incumbrancers," and not to creditors, and that actual notice of a prior mortgage does not affect the rights of the execution creditor. That case involved the construction of section 2085, Civ. Code, which is as follows: "A mortgage of personal property is void as against creditors of the mortgagor, and subsequent purchasers and incumbrancers of the property in good faith for value, unless the original, or an authenticated copy thereof, be filed by depositing the same in the office of the register of deeds of the county where the property mortgaged or any part thereof, is at such time situated." Under this section of the Code a chattle mortgage, *is void* as against creditors of the mortgagor and subsequent purchasers . and incumbrancers of the property in good faith for value." Under section 2089, Civ. Code, a mortgage of personal property "ceases to be valid," as against "creditors of the mortgagor, and subsequent purchasers or incumbrancers in good faith." The creditors, as to whom such mortgage is "void" under the one section, and "ceases to be valid" under the other, are the same. Whether the omission from section 2089 of the words "for value," which are in section 2085, would render necessary any distinction in the construction of the two sections, is not now before us, because the character of the indebtedness here involved is not in question as to either party. But the language of the two sections is identical both as to "creditors" and "subsequent purchasers and incumbrancers in good faith," and the ruling of this court in Pierson v. Hickey, 16 S. D. 46, 91

N. W. 339, is plainly controlling as to creditors under both sections. In Bank v. Lundvigsen, 8 Wyo. 236, 56 Pac. 995, 57 Pac. 934, 80 Am. St. Rep. 928, that court, discussing the two sections of the law of that state governing the filing and renewal of chattel mortgages, which are similar to our own, says: "A mortgage not filed as provided in the act is absolutely void as against creditors of the mortgagor.'" One not renewed as required by the provisions of section 11 "ceases to be valid as against the creditors of the person making the same. * * * Evidently the same class of creditors are intended to be and are covered in both sections." It follows that the creditor who seeks to attack the validity of an unrenewed chattel mortgage must proceed in the same manner as the creditor who seeks to attack the validity of an unfiled mortgage.

In the case of Union National Bank v. Oium, 3 N. D. 193, 54 N. W. 1034, 44 Am. St. Rep. 533, in discussing the rights of a creditor under section 2085, the court says: "While an unfiled chattel mortgage may be void as to a general creditor, he cannot avail himself of the statute until he has armed himself with attachment or execution and levied on the property, or has in some other way secured a lien thereon. Before he has siezed the property covered by the chattel mortgage or secured some lien thereon, he is in no position to raise the question that the mortgage is void as to him. * * * Whether he belongs to that class is one question; whether he is in a position to derive benefit from belonging to that class is another and entirely different question." The general rule as laid down by the authorities is stated in 6 Cyc. 1070:. "Although recording statutes usually provide that an unrecorded mortgage is void as to creditors, the prevailing doctrine only makes the mortgage void against those creditors who obtain a lien on the mortgaged property by attachment or levy of execution before the instrument is filed for record (citing authorities). This rule only applies, however, to creditors who became such before the mortgage was executed; and, where credit was extended to the mortgagor during the time that the mortgage was withheld from record, it has been held that the mortgage is void alike as to creditors with or without liens." In a note dis-

cussing the rule in New York, it is there said: "Although it was formerly regarded as necessary for a creditor whose claim antedated the execution of a mortgage to obtain a lien on the mortgaged property before record, in order to prevail against the mortgagee, * * * It is held that a lien was unnecessary where the claim arose during the time that the mortgage was withheld from record, * * * provided the creditor eventually secured a specific interest in the property by levy of attachment or execution. * * * And this distinction between claims antedating and postdating the mortgage has been abandoned, and the law now is that an unrecorded mortgage is void as to creditors with or without liens. * * * provided they get judgment and levy on the property before a bona fide absolute transfer of it has been made. * * * The reason is that, although a creditor must acquire a lien on the property before attacking the mortgage, it is not the existence of such lien which makes the mortgage void as to him, but he can assert an interest in the mortgaged property only as he could assert an interest in any other property of the debtor." It will thus be seen that, whether the creditor be required to secure his lien by attachment or execution before the filing of the chattel mortgage, or whether he be permitted to acquire such lien by a levy subsequent to the filing of the mortgage, he is not in either case in a position to raise the question of the validity or invalidity of the unfiled or an unrenewed chattel mortgage, until he has first acquired a specific interest in the property by means of levy under an attachment or execution. In Cobbey on Chattel Mortgages, § 774, the rule is thus stated: "To enable a person to attack the validity of a mortgage he must show some right to the property, such as being a subsequent purchaser, lienholder, or a creditor of the mortgagor who has taken legal steps to subject the property to the payment of his debt. A mortgage cannot be legally questioned until the creditor clothes himself with a judgment and execution, or with some legal process against the property; for creditors cannot interfere with the property of their debtors without proceess. It is only a subsequent purchaser or a mortgagee or a creditor who has laid hold of mortgaged property by legal process who can object that the mortgage is invalid because not executed in good faith."

It appears clear that the plaintiff could not attack the validity of this unrenewed mortgage as a creditor, without first having obtained an interest in or a lien upon the mortgaged property through some judicial procees. As plaintiff has never acquired an interest in the mortgaged property by process it cannot, as a creditor, maintain an action for its conversion. Plaintiff's rights as a creditor and as a incumbrancer are entirely distinct and dissimilar. In Cobbey on Chattel Mortgages, § 746, it is said: "A party holding property by virtue of a mortgage may waive his claim under such mortgage or pledge, and attach such property in a suit to recover the debt for which the mortgage was given, and such an attachment is in itself a waiver of the claim under the mortgage. The liens respectively created by mortgage and by attachment on the same property are essentially different, and cannot coexist."

Appellant's next contention is that it was in fact and in law an incumbrancer "in good faith" and it accepted the mortgage from H. S. Drake in September, 1907. Appellant earnestly insists that if it be held that the words, "subject to any incumbrance held by H. W. Dean," were constructive notice, and put the plaintiff on inquiry, such inquiry would have disclosed nothing more than that the prior mortgage to H. W. Dean had "ceased to be valid" as against a subsequent incumbrancer. As we have seen, appellant falls within the class of persons named in the first clause of section 2089—and it is essential to the right it seeks to assert that it be an incumbrancer "in good faith." An unrenewed chattel mortgage "ceases to be valid" only as against a creditor, or a purchaser "in good faith." If the plaintiff be an incumbrancer "in good faith," it is entitled to the protection of the statute, and should recover in this action the value of its interest in the mortgaged property. But "good faith consists in an honest intention to abstain from taking any unconscientious advantage of another, even through the forms or technicalities of law, together with an absence of all information or belief of facts which would render the transaction unconscientious." Civ. Code, § 2448. "Good faith" has been frequently defined by the decisions of the courts as synonymous with the words "without notice"; but this definition

ignores one most vital element of good faith, viz., "an honest intention to abstain from taking any unconscientious advantage of another, even through the forms or technicalities of the law." The reason for the application of this partial and imperfect definition is perhaps found in the fact that when "an absence of all information or belief of facts" is shown, by the purchaser or incumbrancer, the courts presume an honest intention to abstain from taking an unconscientious advantage through the technicalities of the law. And it is true that, in the absence of all information as to facts, etc., such intention may be conclusively presumed. But in the application of the rule, some courts seem to have held that certain kinds of information or belief of facts would not render a transaction "unconscientious," so long as the party brings himself within the strict forms and technicalities of the law, and have not given sufficient consideration, apparently, to the element of "honest intention." When knowledge or information of facts has been brought home to the party, and the court is called upon to determine the effect of such knowledge or information, the question of an "honest intention to abstain from taking an unconscientious advantage of another, even through the forms or technicalities of law," becomes a question vital to good faith.

In the case at bar, there was not an "absence of all information or belief of facts" on the part of plaintiff, as to defendant's mortgage. The plaintiff had express information of the following facts, viz.: That H. W. Dean had been at one time the owner of this Buffalo Pitts engine; that he had sold the same to H. S. Drake, with whom plaintiff was then dealing, and had given back a mortgage on the same to H. W. Dean; that the mortgage plaintiff was then receiving from Drake was "subject to any incumbrance held by H. W. Dean'; and that the "incumbrance" referred to was the same identical mortgage which he now seeks to defeat. Plaintiff also had constructive notice from the record, and must be presumed to have known, that Dean had placed his mortgage of record; that 3 years and 30 days had expired since it was filed; and that Dean had not filed a renewal affidavit. It may be observed, also, that plaintiff's mortgage was executed and filed September 3, 1907, and that the indebtedness secured

thereby was past due since October 1, 1906. With knowledge of
all these facts, the only theory upon which plaintiff may claim to
have acted "in good faith" is that he had a right to believe that
Dean's mortgage had been paid. Plaintiff was not put upon in-
quiry to ascertain whether there was a mortgage to Dean; he
knew that fact both from the express recital in his own mortgage,
and from the record. Therefore, the only question left open to
inquiry was whether Dean's mortgage lien still continued.

Suppose, at the time its mortgage was taken, plaintiff abso-
lutely knew as a fact that Dean's mortgage had not been paid, and
that no affidavit of renewal had been filed, could the plaintiff
claim protection of the statute as an incumbrancer in good faith?
No court would so hold. In such a case the language of the court
in Howard v. First Nat. Bank, 44 Kan. 549, 24 Pac. 983, 10 L. R.
A. 537, is particularly apt: "We do not care to discuss the suffi-
ciency of the affidavit, as we believe with the trial judge that,
under the circumstances of this case, the renewal affidavit is not
a material matter. The affidavit could only be material in case
there were subsequent purchasers or mortgagees in good faith.
But there are no subsequent purchasers and no subsequent mort-
gagees in good faith: First. Because all the mortgagees had full
knowledge of all the mortgages of the plaintiff below, and of the
claims they secured. They each knew that the claims secured
by such mortgages were not paid in whole or in part. In Greg-
ory v. Thomas, 20 Wend. 17, Mr. Justice Cowen says: 'To say
that a man takes in good faith when he acts with notice and of
course under conscious hostility to another who has before taken
a similar title would be a legal solescism. The object of the stat-
ute here is that of all the other registry acts—to prevent imposi-
tion upon subsequent purchasers and mortgagees, who must many
times govern themselves by appearances. When everything is
actually explained to them, they have the best kind of notice and
must be holden to take subject to prior incumbrance.'" Counsel
for appellant, however, quotes and relies upon the following
language used by that court in the same case: "He who pur-
chases after the year has expired during which a mortgage re-
mains in force has a right, in the absence of the renewal affidavit,

to suppose the mortgage has been paid, even though not released on the record." But the rule thus stated applies only when the purchaser or incumbrancer has no knowledge of the fact that the prior incumbrance remains unpaid, nor of any facts or circumstances which put him upon inquiry as to whether the prior incumbrance in fact remains unpaid. But to hold that a man who knows that a prior mortgage has not been paid has a right to suppose such mortgage has been paid would indeed be a "legal solecism."

Section 2452, Civ. Code, states one branch of the rule of constructive notice—"every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry" as to a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself." It is conceded on the record that Dean's mortgage was unpaid when plaintiff took its mortgage. So the ultimate fact in this case which must be decisive is whether the plaintiff knew that Dean's mortgage was unpaid, or had "actual notice of circumstances sufficient to put a prudent man upon inquiry" as to the facts of such nonpayment. Assuming that plaintiff knew from the record in the register of deed's office alone that Drake had given a prior mortgage to Dean, and that Dean had not filed an affidavit of renewal, the fact that Drake inserted in his second mortgage to plaintiff the words "subject to any incumbrance held by said H. W. Dean" was sufficient to put any prudent man on inquiry as to whether Dean's mortgage had been paid. But upon the record before us it appears that no explanation was asked as to why Drake inserted this clause in the second mortgage to plaintiff. Drake, the mortgagor, was Dean's debtor, and the person of all others who knew whether the mortagge had been paid; yet, so far as this record discloses, he was not even asked why this clause was put in plaintiff's mortgage. Drake made no attempt to conceal any fact or to mislead the plaintiff as to the fact that there was a prior mortgage, and it is conceded that the very "incumbrance" referred to was Dean's mortgage, and that plaintiff knew it. Why did Drake put these words in plaintiff's mortgage? Could these words imply anything less than that Dean's incumbrance was unpaid, and that plaintiff must have so under-

stood them, and for that reason made no inquiry of Drake, as to payment? And if plaintiff did so understand the transaction, is his contention here such as to show an honest intention to refrain from taking an unconscientious advantage of Dean through the technicalities of the law?

Considering all the facts known to plaintiff, how can one escape the conviction that plaintiff's failure to make inquiries of Drake was intentional, and with the secret purpose of asserting priority over Dean's mortgage? We are of opinion that the insertion of this clause in plaintiff's mortgage was sufficient of itself to put plaintiff upon inquiry as to whether Dean's mortgage was in fact paid, and to charge plaintiff with constructive notice of the true facts which such inquiry might have disclosed.

We find no error in the record, and the judgment of the trial court is affirmed.

WHITING, P. J., not sittng.