FIRST NATIONAL BANK OF YANKTON et al, Respondents,
v. MAGNER et al, Appellants.

(195 N. W. 1020.)

(File No. 5218.   Opinion filed December 4, 1923.)

1.   **Chattel Mortgages—Liens—Good Faith—As to Creditors, Whether with or Without Notice, Mortgage Ceases to Be Valid After Expiration of Three Years, Unless Renewal Is Effected.**

In Rev. Code 1919, Sec. 1587, providing that a chattel mortgage ceases to be valid "as against creditors of the mortgagor, and subsequent purchasers or incumbrancers in good faith, after the expiration of three years," unless a renewal is affected, the qualification "in good faith" does not apply to creditors, whether prior or subsequent.

2.   **Bankruptcy—Failure to Renew Invalidates Mortgage as to Bankruptcy Trustee.**

A failure to renew a chattel mortgage, as provided by Rev. Code 1919, Sec. 1587, invalidates the mortgage as respects not only general creditors of the mortgagor, but also his trustee in bankruptcy.

3.   **Chattel Mortgages—Good Faith—"Incumbrancer" as Respects Requirement of freedom from Notice of Unrenewed Mortgage Defined.**

The requirement of good faith on the part of an incumbrancer, to invalidate as to him a prior mortgage, not renewed as provided in Rev. Code 1919, Sec. 1587, obtains only as respects a debt which is, when created, secured by his incumbrance; hence where a mortgage is given to secure a prior unsecured debt, notice of an unrenewed mortgage is immaterial, although, in such case, notice is material in respect to priority of an additional advance to the mortgagor made by the mort-

gagee at the time of the subsequent mortgage, which advance is secured by such mortgage.

Appeal from Circuit Court, Yankton County; Hon. R. B. TRIPP, Judge.

Action by the First National Bank of Yankton and another against Patrick M. Magner and others. From judgment for plaintiffs and from an order denying defendants' motion for new trial, defendants appeal. Remanded with directions to modify.

*Clark & Henderson,* of Yankton, for Appellants.

*French, Orvis & French,* of Yankton, for Respondents.

Appellant cited: Kinball v. Kirby, 4 S. D. 152, 55 N. W. 1110; Pierson v. Hickey, 16 S. D. 46; 91 N. W. 339; Cardenas v. Miller, 108 Cal. 250, 49 Am. St. Rep. 84; Blumauer v. Clock, 24 Wash. 596, 64 Pac. 844, 85 Am. St. Rep. 966; Dempsey v. Pforzheimer, 86 Mich. 652, 49 N. W. 465, 13 L. R. A. 388; Moffat v. Beeler, 91 Kan. 209, 137 Pac. 963, Ann. Cas. 1915C, 602; People v. Burns, 161 Mich. 169, 125 N. W. 740, 137 Am. St. Rep. 466.

Respondent cited: Aultman Engine & Thresher Co. v. Young, 25 S. D. 212; Conklin v. Kruse (Kan.), 36 L. R. A. (N. S.) 1124; Funk v. Paul, 64 Wis. 5, 54 Am. Dec. 576; Body v. Jewson, 33 Wis. 409; Bay v. Coddington, 5 Johns, Ch. 54, 9 Am. Dec. 268; Atkinson v. Brook, 26 Vt. 569, 62 Am. Dec. 592; First National Bank v. Western Mortgage & Investment Co. (Tex.), 24 S. W. 691, id. 26 S. W. 490.

POLLEY, J. Appellants, other than defendant Magner, and respondents have each a chattel mortgage on the same property, and this action was brought to determine which is prior in right. The trial court decided that respondents' mortgage was paramount.

[1-3] Respondents' mortgage was executed and filed on the 30th day of December, 1916. It had not been paid at the end of three years from that date, nor did respondents renew the same in the manner provided by section 1587, R. C. 1919. On the 9th day of May, 1921, and while respondents' mortgage was in the above-described condition, appellants' mortgage was executed and filed. Except for the sum of $200 advanced by appellants at the time of the execution of their mortgage, said mortgage was given to secure an indebtedness that had accrued prior to the expiration

of the three-year period after the filing of respondents' mortgage, and possibly prior to the execution of that mortgage; and we assume that at the time of the execution of appellants' mortgage they had actual knowledge of the existence of respondents' mortgage, and that the indebtedness secured thereby had not been paid. As to the said sum of $200 above mentioned, appellants were subsequent incumbrancers with notice, and to that extent their mortgage was inferior in right to that of respondents.

Section 1587, so far as material, reads as follows:

"A mortgage of personal property ceases to be valid as against creditors of the mortgagor, and subsequent purchasers or incumbrancers in good faith, after the expiration of three years from the filing thereof, unless within thirty days next preceding the expiration of such term," etc.

But the qualification "in good faith" does not apply to creditors. So far as creditors are concerned, section 1587 reads:

"A mortgage of personal property ceases to be valid as against creditors of the mortgagor, * * * after the expiration of three years from the filing thereof, unless," etc.

That such is the meaning of that section has already been settled by this court (Kimball Co. v. Kirby, 4 S. D. 152, 55 N. W. 1110, where the cases on the subject are collected and reviewed), and all creditors, whether prior or subsequent, are included. Pierson v. Hickey, 16 S. D. 46, 91 N. W. 339; Cardenas v. Miller, 108 Cal. 250, 39 Pac. 783, 41 Pac. 472, 49 Am. St. Rep. 84; Jones on Chattel Mortgages, § 292. See, also, Karst v. Gane, 136 N. Y. 316, 32 N. E. 1073. And a failure to renew a chattel mortgage as provided by section 1587, renders such mortgage invalid, not only as against the general creditors of the mortgagor, but as to his trustee in bankruptcy as well (In re Thomas [D. C.], 199 Fed. 214; Protter v. Lovell, 91 Misc. Rep. 417, 155 N. Y. Supp. 275). It therefore follows that, as to appellants, respondents' mortgage ceased to be valid; that is, it became void as to appellants at the expiration of the three-year period from the date of filing. Appellants were then at liberty to proceed in any legal manner to subject the mortgaged property to the payment of their debt. They could have levied upon it under an execution, had their claim been reduced to judgment, or they could have attached, had there been grounds for attachment. Either proceeding would

have created a lien which, as to them, would have been superior to respondents' lien under their mortgage.

The question then is, would appellants, by taking a chattel mortgage, become incumbrancers with knowledge of respondents' mortgage, and thereby become inferior in right to respondents? This question is fully, and we think, correctly answered by the Supreme Court of Washington in Smith v. Allen, 78 Wash. 135, 138 Pac. 683, Ann. Cas. 1915D, 300. In that case Smith and Allen were both creditors of Dodge Bros. Smith took a chattel mortgage to secure his claim. The mortgage was filed and recorded in the proper county but it had no certificate of acknowledgment attached thereto, as required by statute, and for that reason, although good as against the mortgagor, was void "as against creditors of the mortgagor and subsequent purchasers, and incumbrancers of the property for value in good faith." Some three months later Allen took a chattel mortgage on the same property to secure his claim. This mortgage was in all respects complete and was properly recorded. Allen's debt not being paid when due, he proceeded to foreclose. Smith thereupon brought this action, to have the priority of the two mortgages determined. In the course of the opinion the court says:

"What, let us now inquire, are the rights of Allen as a mortgagee of Dodge Bros., the mortgage being given to secure the very antecedent debt which made him a creditor of Dodge Bros.? Is it possible that, by taking such mortgage and thus acquiring a lien upon the property of Dodge Bros., all of his superior rights as a creditor of Dodge Bros. are gone? We may assume that he thereby became an incumbrancer with notice of Smith's prior mortgage, but we are not to lose sight of the fact that that mortgage was void as to him as a creditor of Dodge Bros. Did the taking of the mortgage by Allen infuse life into the mortgage of Smith so as to render it superior to Allen's mortgage, given to secure his claim as to which Smith's mortgage was void? To so hold would be to say that Allen must not acquire any lien against the property of Dodge Bros., for to do so would make him a subsequent incumbrancer not 'for value and in good faith,' and thus render his prior superior rights as a creditor of no avail, because of his notice of the existence of Smith's prior void mortgage. It seems to us this cannot be, but that the taking of this mortgage

by Allen as security for the payment of his pre-existing claim as a creditor of Dodge Bros., which was superior to Smith's mortgage, constituted Allen an incumbrancer 'for value and in good faith,' within the meaning of these words as used in the statute. Let us remember that Allen became a creditor of Dodge Bros. long before he took the mortgage from them to secure his claim, and at a time when no mortgage or security was contemplated to be taken to secure his claim."

Before appellants took their mortgage, they were creditors on an equal footing with respondents. By taking the mortgage they acquired a lien on the mortgaged property. This secured their antecedent debt, and having acquired such lien they were entitled to have it foreclosed and have the property sold and the proceeds applied on their indebtedness. As to appellants, respondents had no lien on the property, nor any rights therein except as general creditors.

We are aware that the conclusion we have reached in this case is squarely opposite to the conclusion reached by this court in the case of Thresher Co. v. Young et al, 25 S. D. 212, 126 N. W. 245, Ann. Cas. 1912B, 1101. But after a thoughtful consideration of the question involved, and a careful review of the cases involving the same question, we are satisfied that the conclusion we have now reached is the correct solution of the question. Based upon the record in that case, the decision in Thresher Co. v. Young was right, because the junior mortgagee expressly agreed in the mortgage itself that his mortgage should be subject to, and inferior to, the lien of the first mortgagee, and because of this fact he should have been held to be estopped by his own contract from asserting a superior lien. But the logic of the reasoning in that case is that, where an existing creditor, whose rights are in all respects equal to the holder of a lapsed chattel mortgage, takes a chattel mortgage himself to secure his claim, he thereby revives the former mortgage as against himself; and waives the superior right he possessed as a general creditor. It is freely admitted that appellants could have seized the property under an execution if their claim had been in judgment, or that as against respondents they could have made a valid seizure under a writ of attachment. If, when appellants took their chattel mortgage, they had procured a confession of judgment from the mortgagor, they could have

levied an execution on the property and thereby acquired a lien superior to the lien of respondents' mortgage. This being the case, we can see no reason in law, and certainly there is no reason in the statute in question, why appellants' chattel mortgage should not be held to have created a lien superior to that of respondents' mortgage. It is true that by taking the chattel mortgage appellants became incumbrancers of the mortgaged property, and that such incumbrance was subsequent in time to respondents' mortgage, but it was not taken until after respondents' mortgage had ceased to be valid as against appellants, and it was taken to secure a prior existing debt.

The law provides a simple and inexpensive manner by which a chattel mortgage can be renewed and extended indefinitely, and, if the mortgagee neglects to take the steps necessary to protect his rights, he has only himself to blame if some more vigilant creditor takes advantage of his laches.

This case will be remanded to the circuit court, with directions to modify the judgment by applying the proceeds of the sale of the mortgaged property, first to the payment of the amount, less the sum of $200, adjudged to be due to appellants, and the surplus, if any, to the payment of respondents' debt.

It will be so ordered.

Note.—Reported in 195 N. W. 1020. See, Headnote (1), American Key-Numbered Digest, Chattel mortgages, Key-No. 197(2), 11 C. J. Sec. 233,236; (2) Bankruptcy, Key-No. 188(1), 7 C. J. Sec. 287; (3) Chattel mortgages, Key-No. 155, 11 C. J. Sec. 233 (see 1925 Anno.).

The question as to when the local law deemed to require the registering or recording of a transfer within Sec. 60a of the Bankruptcy Law, is discussed in notes in 5 L. R. A. (N. S.) 148; 18 L. R. A. (N. S.) 1223.