HENRY S. HANSON, Plaintiff and Respondent, v. W. F. BLUM, Defendant and Appellant.

(207 N. W. 144.)

**Chattel mortgages — statute providing for renewal of chattel mortgages supplemental to, and subject to same rule of construction as statute providing for filing thereof.**

1. Section 6762, Comp. Laws 1913, providing for the renewal of mortgages of personal property is supplementary to § 6758, Comp. Laws 1913, providing for the filing of mortgages of personal property, and the same rule of construction should be applied to both sections.

**Chattel mortgages — purposes of statute for filing and for renewal stated.**

2. The purpose of § 6758, Comp. Laws 1913, is to give notice of the existence of mortgage liens. The purpose of § 6762, Comp. Laws 1913, is to clear the record made by the filing of mortgages in compliance with the requirements of § 6758, by raising a presumption of payment, where there is no renewal prior to the expiration of three years from date of filing, on which those dealing with the mortgagors without notice to the contrary may rely.

**Chattel mortgages — "creditor" as used in renewal statute, defined.**

3. A "creditor," within the meaning of that term as used in § 6762, Comp.

---

Note.—(1) Statutory requirements as to recording and filing of chattel mortgage, see 5 R. C. L. 409.

(2) Necessity of refiling and renewal of chattel mortgage, see 5 R. C. L. 418.

Laws 1913, is one who, without notice that the debt secured by an unrenewed chattel mortgage is unpaid, subsequently extends credit or alters his position as to his debtor to his detriment.

**Chattel mortgages — "subsequent incumbrancer in good faith" within renewal statute defined.**

4. A "subsequent encumbrancer in good faith," within the meaning of § 6762, is a "creditor" who takes security for his debt. His character as an incumbrancer is determined by the notice that he has at the time the credit is extended, or his position is altered to his detriment, rather than by the notice that he has at the time the security is taken.

**Chattel mortgages — creditor as to whom unrenewed mortgage is void cannot question its validity, unless he has imposed a lien on mortgaged property.**

5. A creditor as to whom a mortgage is void because not renewed as required by § 6762, cannot question the validity of such mortgage unless and until he has imposed a lien for his debt upon the mortgaged property, but whether such lien is imposed involuntarily as to the debtor, by seizure under execution or attachment, or voluntarily by contract, is immaterial.

**Subrogation — junior lien holder selling under junior lien waives rights acquired by payment of superior lien.**

6. Where a junior lien holder, in order to save the property on which he claims his lien from foreclosure under a superior lien, pays such superior lien claim and thereafter forecloses on and sells the property under his junior lien, he will be held thereby to have waived any rights that he might have acquired as equitable assignee of the superior lien by reason of his payment thereof.

Opinion filed January 4, 1926.

Chattel Mortgages, 11 C. J. § 186 p. 509 n. 55; § 233 p. 543 n. 87, 89, 91, 92. Subrogation, 37 Cyc. p. 383 n. 16.

Appeal from the District Court of Ward County, *Lowe*, J.

Reversed.

*McGee & Goss*, for appellant.

"Revised Codes 1919, § 1587, provided that a chattel mortgage ceases to be valid as against creditors of the mortgagor and subsequent purchasers or incumbrancers in good faith after the expiration of three years—unless a renewal is effected—the qualification 'in good faith' does not apply to creditors whether prior or subsequent." First Nat. Bank v. Magner (S. D.) 105 N. W. 1020; First State Bank v. Goodrich (S. D.) 105 N. W. 1022.

"Nothing supplies the place of registry nor dispenses with it, so far as those are concerned who are not parties to the mortgage, and that when ten years have elapsed from the date of inscription without re-inscription, the mortgage is without effect as to all persons whomsoever who are not parties to the mortgage." Citing Adams v. Daunis, 29 La. Ann. 315; Pickett v. Foster (U. S.) 37 L. ed. 829, 837.

"To bring himself within the act he must show that he parted with value while the default existed." Petrie v. Wyman (N. D.) 159 N. W. 616.

*B. A. Dickinson, Palda & Aaker* and *C. E. Brace,* for respondent.

Nuessle, J. In 1917, the Bjerre brothers were farming on the Berthhold Reservation in McLean county. They borrowed $1,000 from the plaintiff Hanson. To secure this indebtedness they gave Hanson a mortgage on a threshing outfit. Hanson filed this mortgage as required by § 6758, Comp. Laws 1913, on December 5th, 1917. Thereafter, the Bjerre brothers also had business relations with the defendant Blum. They also contracted a large indebtedness with their bank, to secure which, they gave security on the same threshing outfit. Hanson's debt was not paid, but Hanson failed to renew his mortgage at the expiration of three years from the date of filing as required by § 6772, Comp. Laws 1913. In August, 1921, Blum took a mortgage for $5,960.08 covering the same property. This was to secure the Bjerre brothers' old indebtedness to the bank taken over by Blum, which had been incurred within the three years after December 5th, 1917, and also (this must be assumed in view of defendant's answer, his offers of proof, the court's rulings, and the instructions given) some $2,000 indebtedness incurred subsequent to the expiration of the three year period. Thereafter, Bjerre brothers left the state, and Blum, declaring his debt due as his mortgage provided he might, seized the property and sold the same at foreclosure sale in January, 1922. Bjerre brothers had had certain repairs made on the threshing outfit for which an artisan's lien had been filed under the provisions of § 6877, Comp. Laws 1913, as amended. The amount of the lien claim was about $100. After Blum seized the property and before the sale, the owner of this lien claim demanded payment thereof, and to save foreclosure Blum paid the same and took a satisfaction of the lien. At the time that

Blum took his mortgage security in August, 1921, he knew that Hanson's mortgage, though not renewed, was unpaid, but he did not have such knowledge at the time he extended the $2,000 credit on December 17, 1920. Blum purchased the property at the foreclosure sale. Sometime after the sale, Hanson, asserting a right thereto under his mortgage, demanded the property of Blum. Blum refused to surrender it contending that his claim, under his mortgage and purchase on foreclosure thereof was superior to the lien of Hanson's mortgage for the reason that such mortgage had not been renewed. Thereupon, Hanson began the instant action in replevin to recover possession of the property or its value to the extent of his claim in case a delivery of the property could not be had. Blum, answering, claimed a superior right to the property by reason of the fact that Hanson's mortgage had not been renewed; that he had taken a mortgage on the property after the expiration of the three year period from the date of the filing of the Hanson mortgage to secure an obligation, a portion of which, at least, had been incurred after the expiration of the three year period and without knowledge that the mortgage was unpaid; that in any event he was a creditor in possession of the property and therefore in position to challenge the validity of the Hanson mortgage. He also asserted a right to the possession of the property by virtue of the artisan's lien which he had paid.

The case was tried to a jury. On the trial the issues were confined by the court to the single question of notice on the part of Blum that the Hanson mortgage debt was unpaid at the time of the foreclosure of the mortgage under which he claimed. The jury found for Hanson and judgment was entered on the verdict. From this judgment the defendant Blum perfected the instant appeal.

Defendant has specified many errors upon which he relies for a reversal in this case. He has, however, grouped these specifications under two assignments. The first dealing with the construction and effect of § 6762, Comp. Laws 1913, and the second with his contention that he was an equitable assignee of the artisan's lien and, as such, entitled to the possession of the property involved for purposes of foreclosure.

As we understand the defendant's contentions, they are, first, that plaintiff's mortgage not having been renewed is void as against his

53 N. Dak.—34.

mortgage, if not as to the antecedent indebtedness secured thereby, at least as to the portion of the debt incurred after the failure to renew; next, admitting that his mortgage was subsequent in time to Hanson's mortgage and that the indebtedness secured thereby was incurred prior to the expiration of the three year period from the date of the filing of the Hanson mortgage, and that he knew when he took his mortgage that the Hanson mortgage was unpaid, nevertheless, he was, at the time of the taking of such mortgage and continued thereafter to be, a creditor, and though he was an incumbrancer with notice, nevertheless, his possession of the property as purchaser at the foreclosure sale gave him the right as a creditor to challenge the validity of Hanson's mortgage by reason of its not having been renewed; lastly, that the lien for repairs was a lien superior to any mortgage lien, including Hanson's, and that having paid the lien claim in order to protect the property and save it from foreclosure, thereby he became an equitable assignee of the lien—stood in the shoes of the lien claimant, and was entitled to the possession of the property for purpose of foreclosure.

Our statute, §§ 6758, 6759, and 6762, Comp. Laws 1913, making provision for the filing and renewal of mortgages of personal property, reads as follows:

Sec. 6758. *"A mortgage of personal property is void as against creditors of the mortgagor and subsequent purchasers and incumbrancers of the property in good faith for value* unless the original or an authenticated copy thereof is filed by depositing the same in the office of the register of deeds of the county where the property mortgaged, or any part thereof, is at such time situated."

Sec. 6759. "The filing of a mortgage of personal property in conformity with the provisions of this article operates as notice thereof to all subsequent purchasers and incumbrancers of so much of said property as is at the time mentioned in the preceding section, situated in the county or counties wherein such mortgage or an authenticated copy thereof is filed."

Sec. 6762. *"A mortgage of personal property ceases to be valid as against creditors of the mortgagor, and subsequent purchasers or incumbrancers in good faith* after the expiration of three years from the filing thereof, except as hereinbefore provided, unless within ninety days next preceding the expiration of such term a copy of the mort-

gage, and a statement of the amount of existing debt for which the mortgagee or his assignee claims a lien sworn to and subscribed by him, his agent or attorney, are filed anew in the office of the register of deeds in the county in which the mortgage was originally filed, and in like manner the mortgage and statement of debt must be again filed every three years or it ceases to be valid as against the parties above mentioned; provided, that mortgages of the personal property belonging to street car companies, telephone companies and telegraph companies need not be renewed; and, provided further, that trust deeds or other trust conveyances or instruments executed to secure bonds of corporations need not be renewed."

Thus it becomes necessary to consider § 6762, supra, and to measure its effect. The words with which we are here chiefly concerned are, "a mortgage of personal property ceases 'to be valid as against creditors of the mortgagor and subsequent purchasers or incumbrancers in good faith." Who are meant by creditors? Who are subsequent purchasers and incumbrancers? What is meant by good faith? Does the requirement as to good faith apply to all creditors or only as to subsequent purchasers and incumbrancers? This court has not hitherto had occasion to construe § 6762. Section 6758, however, has been construed and applied in numerous cases. It is to be noted that the initial words of the two sections are almost identical. Judge Corliss, speaking for this court in Union Nat. Bank v. Oium, reported at 3 N. D. 193, 44 Am. St. Rep. 533, 54 N. W. 1034, gave careful and elaborate consideration to this section of the statute. It was there held that a "creditor" within the contemplation of the statute was one who subsequent to its execution and without actual notice of an unfiled mortgage altered his position to his detriment on the strength of the apparent freedom of the property from incumbrance. Further, that though a mortgage might be void as to a general creditor, he was not in position to challenge its validity until he had fixed a lien on the property by attachment or execution. The holding in that case is wholly contrary to various of the contentions raised by the defendant, and if the reasoning on which it is based is followed and applied in the construction of § 6762, those contentions must be resolved against him. Defendant appreciates that fact and therefore levels an attack particularly against the decision in that case.

It seems to us that in determining whether the course of reasoning followed by Judge Corliss ought likewise to be followed in the instant case and whether the Oium Case ought to be held a binding precedent, we should consider the origin and relationship of the two §§ 6758 and 6762, and the purpose underlying their enactment. At common law a mortgage of personal property was good as against everyone regardless of the fact of notice. 5 R. C. L. 397. But fraud and injustice frequently resulted. Innocent parties suffered on account of lack of notice. So the statute requiring filing was enacted in order to give notice. See Union Nat. Bank v. Oium, supra; Sykes v. Hannawalt, 5 N. D. 335, 65 N. W. 682. But a mortgage being filed, fraud and injustice might likewise result where through oversight or fraudulent design no satisfaction was filed though the mortgage debt was paid and satisfied. So the twin statute requiring renewal was enacted. The requirement as to filing was to give notice in the first instance of the existence of the mortgage lien; the requirement as to renewal, to clear the record made by the filing statute, by raising the presumption of payment in the absence of notice that the mortgage had not been paid though three years had elapsed since its filing. The latter statute was supplementary to the former. The statutes are twins, born of one purpose—to prevent injury and loss to innocent persons. On the one hand to those who on the strength of apparent ownership might be led to extend credit or change their positions to their detriment; and on the other hand to those who might be induced by a false record to believe that the property was encumbered while in fact clear. These statutes were first enacted as a part of the same act in New York in 1833. See chapter 279, Laws of 1833. With slight modifications they were included in the original proposed Field Code as parts of article 2 of chapter 3 of the Civil Code, whence they were taken by the Legislative Assembly of Dakota Territory in 1866. They appear in substantially the same form in the 1877 Revised Codes of Dakota Territory as §§ 1744 and 1748, of the Civil Code, and have descended practically unchanged as the present statutes in both North and South Dakota. Thus it appears that these two sections have a common origin, a common history and a common purpose. We therefore hold that the Oium Case must either control in our consideration of § 6762, or be

overruled, and such construction as is otherwise adopted for § 6762 likewise be applied to § 6758.

Counsel for the defendant cites in support of his contention: Adams v. Daunis, 29 La. Ann. 315; Bondurant v. Watson, 103 U. S. 281, 26 L. ed. 447; Pickett v. Foster, 149 U. S. 505, 37 L. ed. 829, 13 Sup. Ct. Rep. 998; Smith v. Allen, 78 Wash. 135, 138 Pac. 683, Ann. Cas. 1915D, 300; Cardenas v. Miller, 108 Cal. 250, 49 Am. St. Rep. 84, 39 Pac. 783, 41 Pac. 472; W. W. Kimball Co. v. Kirby, 4 S. D. 152, 55 N. W. 1110; Pierson v. Hickey, 16 S. D. 46, 91 N. W. 339; Aultman Engine & Thresher Co. v. Young, 25 S. D. 212, 126 N. W. 245, Ann. Cas. 1912B, 1101; First Nat. Bank v. Magner, 47 S. D. 80, 195 N. W. 1020; First State Bank v. Goodrich, 47 S. D. 85, 195 N. W. 1022. He particularly relies upon the South Dakota cases since they involve statutes identical with our own. He insists that § 6762 when it was re-enacted in the 1895 code revision was then adopted from South Dakota with the construction placed upon it by the South Dakota court in W. W. Kimball Co. v. Kirby, 4 S. D. 152, 55 N. W. 1110. We think, however, that counsel is in error in this contention. In the first place, § 6762, in the 1895 revision of the codes was simply a re-enactment of the original statute. As the history of this enactment clearly indicates, there is little room to say that the section, as we now have it, was taken from South Dakota. In the second place, the Kimball-Kirby Case does not deal with § 6762 at all. It deals with § 6758. Furthermore, it must be remembered that the opinion in the Oium Case was handed down in 1892, three years prior to the 1895 revision. So it seems clear that the legislation must have approved of the doctrine of the Oium Case since it made no change in § 6758 construed in that case. The later cases from South Dakota relied upon by counsel and cited above, follow the Kimball-Kirby case, and in their consideration of the renewal statute, § 6762, the court adopted the reasoning of that case as applied to the filing statute, § 6758, just as we now, in considering the renewal statute, adopt the reasoning of the Oium Case as applied to the filing statute.

The defendant also insists that the legislature intended to and did change the rule of the Oium Case by the enactment of § 25 of chapter 113, Sess. Laws 1899 (the Uniform Negotiable Instruments Act). Section 25 of that act, now § 6910, Comp. Laws 1913, reads:

"Value is any consideration sufficient to support a simple contract. An antecedent or pre-existing debt constitutes value; and is deemed such whether the instrument is payable on demand or at a future time."

We are unable, however, to agree with this contention. The Oium Case was decided in 1892. The doctrine there announced stood unchallenged up to the time of the enactment of the Uniform Negotiable Instruments Act, and since that time has been approved and reaffirmed. That doctrine amounts simply to this: Section 6758 requires that chattel mortgages be filed. Failure to meet this requirement visits a penalty upon the mortgagees in that it subordinates the mortgage claims to those of such persons as relying upon the apparent unencumbered ownership of the mortgagors, extend credit or change positions to their detriment. Whether the debt is present or antecedent is immaterial so long as there is an extension of credit or a detrimental change of position induced by lack of notice on account of failure to file. We think by no stretch can it be said that there was any intention on the part of the legislature to change or modify the effect of the statute as thus construed and applied. Even though this were not so, nevertheless, it is now too late to raise the point in view of the long continued approval of and acquiescence in the rule established in the Oium Case. See Sykes v. Hannawalt, supra; Petrie v. Wyman, 35 N. D. 126, 159 N. W. 616; Hansboro State Bank v. Imperial Elevator Co. 46 N. D. 363, 179 N. W. 669; Moen v. Kilzer Lumber Co. 48 N. D. 420, 184 N. W. 989. As a matter of precedent we feel bound by the Oium Case. Furthermore, after careful consideration of the various authorities cited by the defendant, as a matter of logical reasoning we approve of the Oium Case.

We hold then, that since the defendant Blum knew the Hanson mortgage was unpaid at the time Blum took his mortgage, he was not a subsequent incumbrancer in good faith in so far as that mortgage secured indebtedness incurred prior to December 5th, 1920, when the Hanson mortgage should have been renewed. We also hold that as to any unsecured indebtedness owing by Bjerre brothers to Blum which was incurred when Blum did not know the Hanson mortgage was unpaid, and after the expiration of the three year period beginning December 5th, 1917, Blum is not in a position to attack the validity of Hanson's mortgage by reason of his possession of the property involved

through foreclosure of his mortgage. But we further hold that as to any indebtedness incurred by Bjerre brothers after December 5th, 1920, when Blum had no notice of the fact that the Hanson mortgage was still unpaid, though thereafter secured by the mortgage of August, 1921, when he had notice, such mortgage is superior to the Hanson mortgage by reason of Hanson's failure to renew. That is, notice at the time the credit is given, rather than at the time the security is taken, determines priority over an unfiled or unrenewed mortgage.

We are impelled to this latter conclusion by virtue of that same process of reasoning which resulted in the conclusion in the Oium Case. Section 6762 is a filing statute. Its purpose is to give notice. Where a creditor without notice of a mortgage, as Blum was here at the time the indebtedness was incurred, becomes such on the strength of the apparent freedom of the debtor's property from encumbrance, the mortgage is void as against him. As is so clearly demonstrated in the Oium Case, there is "a distinction between the right of a creditor to insist that an unfiled (unrenewed) chattel mortgage is void and the ability to enforce this right." See also Hansboro State Bank v. Imperial Elevator Co. 46 N. D. 363, 179 N. W. 669; Aultman Engine & Thresher Co. v. Young, 25 S. D. 212, 126 N. W. 245, Ann. Cas. 1912B, 1101, and cases cited in note in Ann. Cas. 1912B, 1106. Whether his lien is involuntarily (as to the debtor) fixed on the property by operation of law, as by execution or attachment, or voluntarily by contract, as by mortgage to secure past indebtedness seems to us immaterial, so only that it is fixed. We can conceive of no logical theory under which it is possible to say that it may be fixed by operation of law but not by contract. Indeed, this is the implication of the Oium Case. See also Dempsey v. Pforzheimer, 86 Mich. 652, 13 L.R.A. 388, 49 N. W. 465. In the instant case, the trial court rigidly adhered to the theory that since the mortgage under which Blum claimed was given to secure a past indebtedness at a time when Blum knew the Hanson mortgage was still unpaid, it was not a subsequent encumbrance in good faith within the purview of § 6762, even though when the debt was incurred the Hanson mortgage was outlawed and Blum did not then know it was unpaid. As we read the record this theory actuated the rulings of the trial court in the rejection of testimony offered by the defendant and in the giving of the instructions defining the issues

to be passed upon by the jury. For this reason, we think that the judgment appealed from must be reversed and a new trial ordered.

There remains for consideration the further point raised by the defendant by his second assignment of error, that is, that having, as mortgagee, paid and satisfied a superior artisan's lien he became thereby an equitable assignee of the same and entitled to·retain the possession of the property for purposes of foreclosure thereof. The difficulty with defendant's position in this respect is, that he had paid the lien claim. He took no assignment thereof. He never, until the present difficulty arose, claimed any rights thereunder, but chose to foreclose his mortgage and not the lien. He gave no notice that there was any lien. He bought the property in at foreclosure sale just as anyone else might have done. The basis of his claim to the property involved and demanded by the plaintiff was by reason of his own junior mortgage and the purchase of the property at foreclosure sale thereunder. Under such circumstances he cannot now be heard to assert a claim under the artisan's lien. He abandoned and waived his right to do that, if he ever had any such right. Had a third person bought in the property at the sale, surely defendant could not now assert such a claim as against the purchaser. Why should he be in any better position because the property was struck off to himself? This was the theory behind the ruling of the trial court when defendant raised the point in that court. In this respect, we think that the trial court was right. However, for the reasons heretofore considered and set forth there must be a reversal.

The judgment appealed from is reversed and a new trial ordered.

CHRISTIANSON, Ch. J., and BIRDZELL, BURKE, and JOHNSON, JJ., concur.